THE STATE OF OHIO, APPELLEE, *v.* LONG, APPELLANT.

[Cite as *State v. Long,* **138 Ohio St.3d 478, 2014-Ohio-849.**]

*Criminal law—Sentencing—Youth as mitigating factor for juvenile offender—R.C. 2929.03(A)—Eighth Amendment to the United States Constitution.*

(No. 2012-1410—Submitted June 11, 2013—Decided March 12, 2014.)

APPEAL from the Court of Appeals for Hamilton County, No. C-110160, 2012-Ohio-3052.

_____

SYLLABUS OF THE COURT

1. A court, in exercising its discretion under R.C. 2929.03(A), must separately consider the youth of a juvenile offender as a mitigating factor before imposing a sentence of life without parole. (*Miller v. Alabama*, ___ U.S. ___, 132 S.Ct. 2455, 183 L.Ed.2d 407 (2012), followed.)

2. The record must reflect that the court specifically considered the juvenile offender's youth as a mitigating factor at sentencing when a prison term of life without parole is imposed.

_____

**LANZINGER, J.**

{¶ 1} In this case, we are asked whether a trial court violates the Eighth Amendment by imposing a sentence of life imprisonment without parole for an aggravated murder committed by a juvenile. We hold that a court, in exercising its discretion under R.C. 2929.03(A), must separately consider the youth of a juvenile offender as a mitigating factor before imposing a sentence of life without parole in light of *Miller v. Alabama*, ___ U.S. ___, 132 S.Ct. 2455, 183 L.Ed.2d 407 (2012).

## I. Case Background

{¶ 2} Appellant, Eric Long, and his two codefendants were charged in a 13-count indictment with several offenses stemming from two separate shootings in March 2009. When the offenses were committed, Long was 17 years old. According to public information from the Ohio Department of Rehabilitation and Correction, codefendant Fonta Whipple was 26 years old, and codefendant Jashawn Clark was 25. http://www.drc.state.oh.us/OffenderSearch/Search.aspx.

{¶ 3} Following a joint jury trial, all three codefendants were found guilty of two counts of aggravated murder, three counts of felonious assault, two counts of having weapons while under disability, one count of improperly discharging a firearm into a habitation, and various firearm specifications. Long was also convicted of one count of carrying concealed weapons. At a joint sentencing hearing with his two codefendants, Long was sentenced to consecutive terms of life imprisonment without parole on the aggravated-murder counts and an additional 19 years on the remaining counts and specifications, also consecutive.

{¶ 4} Long appealed to the First District Court of Appeals. Among the various assignments of error, he challenged his consecutive sentences of life imprisonment without parole. Long argued that the trial court had failed to consider the factors set forth in R.C. 2929.12(A), (B), (C), (D), and (E) and the principles and purposes of sentencing. Specifically, he contended that the trial court had failed to consider his youth as a mitigating factor on the record and that a life term imposed on a teenager amounts to cruel and unusual punishment.

{¶ 5} In rejecting Long's assignment of error based on the Eighth Amendment to the United States Constitution, the First District noted that the United States Supreme Court had recently held that a mandatory life-without-parole sentence for juvenile offenders is cruel and unusual punishment in *Miller v. Alabama*, ___ U.S. ___, 132 S.Ct. 2455, 183 L.Ed.2d 407 (2012). The court of appeals distinguished *Miller* on grounds that the sentence imposed by the trial

court was not mandatory. R.C. 2929.03(A) allows the trial court to exercise its discretion when sentencing for aggravated murder by imposing life imprisonment without parole or with parole eligibility after 20, 25, or 30 years.

**{¶ 6}** The appellate court further determined that the trial court "was able to consider whether Long's 'youth and its attendant characteristics, along with the nature of his crime, made a lesser sentence (for example, life with the possibility of parole) more appropriate.' *Miller* at [2460]." 2012-Ohio-3052, ¶ 52. The court of appeals then detailed how it believed the record reflected that the trial court did consider Long's youth and its attendant characteristics. *Id.* at ¶ 53-54.

**{¶ 7}** We accepted Long's discretionary appeal on reconsideration. 133 Ohio St.3d 1502, 2012-Ohio-5693, 979 N.E.2d 348. The sole proposition of law before this court is that "[t]he Eighth Amendment requires trial courts to consider youth as a mitigating factor when sentencing a child to life without parole for a homicide." In adopting this proposition, we further hold that the record must reflect that the court specifically considered the juvenile offender's youth as a mitigating factor at sentencing when a prison term of life without parole is imposed.

## II. Legal Analysis

### A. *Eighth Amendment*

**{¶ 8}** The Eighth Amendment to the United States Constitution states, "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." As we recently noted, "Central to the Constitution's prohibition against cruel and unusual punishment is the 'precept of justice that punishment for crime should be graduated and proportioned to [the] offense.' " *In re C.P.*, 131 Ohio St.3d 513, 2012-Ohio-1446, 967 N.E.2d 729, ¶ 25, quoting *Weems v. United States*, 217 U.S. 349, 367, 30 S.Ct. 544, 54 L.Ed. 793 (1910). As applied to juveniles, the United States Supreme Court has held that the Eighth Amendment prohibits the imposition of the death penalty and the

3

imposition of life without the possibility of parole for nonhomicide offenses. *Roper v. Simmons*, 543 U.S. 551, 125 S.Ct. 1183, 161 L.Ed.2d 1 (2005); *Graham v. Florida*, 560 U.S. 48, 130 S.Ct. 2011, 176 L.Ed.2d 825 (2010). Most recently, the Eighth Amendment was held to ban mandatory life-without-parole sentences on juveniles in *Miller*.

### B. Threshold Question

{¶ 9} We first address Long's threshold question of whether despite being convicted of aggravated murder, Long committed a "homicide" offense as that term is used in *Graham*. The United States Supreme Court stated in *Graham* that a "juvenile offender who did not kill or intend to kill has a twice diminished moral culpability," *id.* at 69, and held that the Eighth Amendment prohibits the imposition of a life-without-parole sentence on a juvenile for a nonhomicide offense, *id.* at 82. Long argues that by using a complicity instruction, the trial court permitted the jury to convict him of aggravated murder without necessarily finding that he acted with prior calculation or with a specific intent to kill. He concludes that this means that he was not actually convicted of a homicide offense and could not be sentenced to life imprisonment without parole pursuant to *Graham*. But because Long did not raise this issue in the court of appeals or argue it in his memorandum seeking jurisdiction in this court, we will not consider this issue, as it is not properly before the court.[1] *See State v. Chappell*, 127 Ohio St.3d 376, 2010-Ohio-5991, 939 N.E.2d 1234, ¶ 26.

{¶ 10} We now turn to Long's argument that *Miller* requires us to remand this case for a resentencing hearing that complies with *Miller* and *Graham*.

---

1. For this same reason, we also will not address Long's argument that we should hold that the Ohio Constitution, Article I, Section 9, requires that all children have the right to a meaningful opportunity for release regardless of the crimes they have committed.

*C.* Miller v. Alabama

**{¶ 11}** Long argues that *Miller* requires a trial court to consider the defendant's youth and its attendant characteristics when imposing sentence if that defendant committed the offense as a juvenile. And he contends that the record must show that the trial court actually considered the defendant's youth. We agree.

**{¶ 12}** In *Miller*, the United States Supreme Court began by reviewing its previous decisions regarding the sentencing of juveniles.

> *Roper* and *Graham* establish that children are constitutionally different from adults for purposes of sentencing. Because juveniles have diminished culpability and greater prospects for reform, we explained, "they are less deserving of the most severe punishments." *Graham*, 560 U.S. at 68, 130 S.Ct. at 2026, 176 L.Ed.2d 825. Those cases relied on three significant gaps between juveniles and adults. First, children have a " 'lack of maturity and an underdeveloped sense of responsibility,' " leading to recklessness, impulsivity, and heedless risk-taking. *Roper*, 543 U.S., at 569, 125 S.Ct. 1183, 161 L.Ed.2d 1. Second, children "are more vulnerable * * * to negative influences and outside pressures," including from their family and peers; they have limited "contro[l] over their own environment" and lack the ability to extricate themselves from horrific, crime-producing settings. *Ibid.* And third, a child's character is not as "well formed" as an adult's; his traits are "less fixed" and his actions less likely to be "evidence of irretrievabl[e] deprav[ity]." *Id.*, at 570, 125 S.Ct. 1183, 161 L.Ed. 2d 1.

*Miller*, 132 S.Ct. at 2464, 183 L.Ed.2d 407.

{¶ 13} The *Miller* court continued:

> Most fundamentally, *Graham* insists that youth matters in determining the appropriateness of a lifetime of incarceration without the possibility of parole. In the circumstances there, juvenile status precluded a life-without-parole sentence, even though an adult could receive it for a similar crime. * * * "An offender's age," we made clear in *Graham*, "is relevant to the Eighth Amendment," and so "criminal procedure laws that fail to take defendants' youthfulness into account at all would be flawed." *Id*., at ___, 130 S.Ct. 2011, 176 L.Ed.2d 825.

*Id*. at 2465-2466.

{¶ 14} *Miller* concluded, "Although we do not foreclose a sentencer's ability to make that judgment [to impose life without parole] in homicide cases, we require it to take into account how children are different, and how those differences counsel against irrevocably sentencing them to a lifetime in prison." *Id*. at 2469. It reiterated:

> Our decision does not categorically bar a penalty for a class of offenders or type of crime—as, for example, we did in *Roper* or *Graham*. Instead, *it mandates only that a sentencer follow a certain process—considering an offender's youth and attendant characteristics*—before imposing a particular penalty.

(Emphasis added.) *Id.* at 2471.

6

**{¶ 15}** The *Miller* decision does not lay out the "certain process" that trial judges should follow when sentencing juveniles. Long urges that this court should follow the lead of the Wyoming Supreme Court and require the consideration of the following factors when sentencing a juvenile offender to life without the possibility of parole: (1) the character and record of the juvenile, (2) the background and mental and emotional development of the juvenile, (3) the juvenile's chronological age and the immaturity, impetuosity, and failure to appreciate the risks and consequences associated with youth, (4) the family and home environment that surrounds the juvenile, (5) the circumstances of the offense, including the extent of the juvenile's participation and the way familial and peer pressure may have affected the juvenile, (6) whether the juvenile could have been charged with and convicted of a lesser offense if not for incompetencies associated with youth, such as the juvenile's relative inability to deal with police and prosecutors or to assist his own attorney, and (7) the juvenile's potential for rehabilitation. *Bear Cloud v. State*, 2013 WY 18, 294 P.3d 36, ¶ 42.

**{¶ 16}** Although the Wyoming factors may prove helpful to courts as they select appropriate sentences for juveniles, we note that Ohio statutes do not require such findings. In imposing a prison sentence, the sentencing court has discretion to state its own reasons in choosing a sentence within a statutory range unless a mandatory prison term must be imposed.

*D. Ohio Sentencing*

**{¶ 17}** In Ohio, two statutory sections serve as a general guide for every sentencing. First, R.C. 2929.11(A) provides that the overriding purposes of felony sentencing "are to protect the public from future crime by the offender and others and to punish the offender." To achieve these purposes, the trial court "shall consider the need for incapacitating the offender, deterring the offender and others from future crime, rehabilitating the offender, and making restitution." *Id.*

The sentence must be "commensurate with and not demeaning to the seriousness of the offender's conduct and its impact upon the victim, and consistent with sentences imposed for similar crimes committed by similar offenders."  R.C. 2929.11(B).  Thus, both the nature of the offender and the possibility of the offender's rehabilitation are already points for the court's sentencing deliberation.

{¶ 18} Second, R.C. 2929.12 specifically provides that in exercising its discretion, a trial court must consider certain factors that make the offense more or less serious and that indicate whether the offender is more or less likely to commit future offenses.  Although youth is not individually mentioned in the statute, an offender's conduct is considered less serious when there are "substantial grounds to mitigate the offender's conduct, although the grounds are not enough to constitute a defense."  R.C. 2929.12(C)(4).  R.C. 2929.12(C) and (E) also permit a trial court to consider "any other relevant factors" to determine that an offense is less serious or that an offender is less likely to recidivate.  An offender's youth and the attendant circumstances of youth may be considered under either of these provisions pursuant to *Miller* before the court imposes a sentence on a juvenile.  R.C. 2929.11 and 2929.12 do not prevent a court from considering youth as a factor that makes an offense less serious or makes an offender less likely to commit future offenses.

{¶ 19} As applied to a juvenile found guilty of aggravated murder under R.C. 2929.03(A), then, Ohio's sentencing scheme does not fall afoul of *Miller*, because the sentence of life without parole is discretionary.  Nor is our criminal procedure flawed under *Graham* and *Miller* by failing to take into account that a defendant is a youthful offender.  Nevertheless, for clarification, we expressly hold that youth is a mitigating factor for a court to consider when sentencing a juvenile.  But this does not mean that a juvenile may be sentenced only to the minimum term.  The offender's youth at the time of the offense must still be weighed against any statutory consideration that might make an offense more

serious or an offender more likely to recidivate. Yet because a life-without-parole sentence implies that rehabilitation is impossible, when the court selects this most serious sanction, its reasoning for the choice ought to be clear on the record.

*E. Long's Sentencing Hearing*

**{¶ 20}** Long argues that the trial court's sentencing statement fails to demonstrate that it followed the dictates of *Miller* to consider youth as a mitigating factor. He acknowledges that *Miller* had not yet been decided when he was sentenced but argues that due to his age, he should have received only a minimum sentence. The state contends to the contrary that the record shows that the trial court did consider Long's youth before imposing sentence because the sentencing memoranda, presentence investigation report, and statement by Long's attorney at sentencing detail Long's history, character, and condition. The trial court also had information concerning a number of aggravating factors that support the sentence of life without parole.

1. Sentencing Memoranda

**{¶ 21}** Long submitted a sentencing memorandum requesting the minimum sentence before his sentencing hearing. It focused on Long's youth and argued:

> Adolescents, are more vulnerable, more impulsive, and less self-disciplined that adults, and are without the same capacity to control their conduct and to think in long-range terms. They are particularly impressionable and subject to peer pressure, and prone to experiment, risk-taking and bravado. Crimes committed by youths may be just as harmful to victims as those committed by older persons, but they deserve less punishment because adolescents may have less capacity than adults to control their conduct. Moreover, youth crime as such is not exclusively the

offender's fault; offenses by the young also represent a failure of family, school, and the social system, which share responsibility for the development of America's youth.

(Footnotes omitted.)

{¶ 22} The state in its sentencing memorandum also noted that Long was a juvenile at the time of the offenses but pointed out that he had already accumulated a lengthy juvenile record and had been committed to the Department of Youth Services before the juvenile court relinquished jurisdiction over him. Yet in its memorandum, the prosecutor treated the three defendants as a group, although two had been adults when the crime was committed. With regard to the aggravated-murder counts, the state requested

> that the Court impose upon each Defendant consecutive prison terms of Life imprisonment without parole. In making this request the State notes each Defendant's youth (which means that even after thirty years they could still pose a danger to society); each Defendant's total lack of remorse for his crimes; each Defendant's total and complete imperviousness to rehabilitative efforts in the past; each Defendant's criminal history as a predictor for future criminal behavior; and the utter and senseless violence perpetrated in this case against persons who had not harmed or threatened harm to Defendants.

Although both memoranda acknowledged Long's status as a juvenile at the time of the offense, they used that fact for divergent purposes—Long, to request the minimum sentence; the state, to justify the maximum sentence.

**{¶ 23}** In addition to the sentencing memoranda, a presentence investigation report was prepared for the trial court's review. Long declined to provide a statement; so other than his juvenile record and a list of pending counts, the report contains sparse details on his educational and family background or his physical and mental condition.

2. Sentencing Hearing

**{¶ 24}** Each defendant's attorney addressed the court before sentencing. Long's counsel stated:

> *As the Court is aware, he was 17 when this happened. He was a juvenile*. He was not previously convicted like the other two defendants. He doesn't have time already. He starts with a clean slate in front of this Court.
>
> Your Honor, I would ask you to consider imposing the minimum term, because Eric won't even be eligible for parole until he's 47, and a lot can happen between now and that point, where he's going to gain perspective, where he will become more secure, *after all, he was a child. He was a juvenile when this happened. I think that puts him in a different light than the other two individuals.*
>
> I think the Court can also glean from watching him throughout this whole process in a different situation. His demeanor, the way that he's dealt with this situation shows that *he is dissimilar to his co-defendants.*
>
> I think you can describe him sort of as a deer in headlights through the last portion of this court trial. I'd *ask the Court to take that into consideration* and give him a glimmer of hope, giving

him a chance that some day he can return to society, hopefully a changed and rehabilitated man.

*I'd like you to take that into consideration.* Judge, I'd ask you to impose minimum sentences, even though the minimum sentence in this case is very significant, and I'll submit it.

(Emphasis added.)  It is obvious that defense counsel raised the issue of Long's youth as a mitigating factor.

{¶ 25} The state, however, argued that Long and his codefendants should get the maximum penalty:

I ask the court to impose a sentence of life without parole on each of these defendants, because I think that's the only thing that will protect the public.

*I know that youth is usually a mitigating factor.*  In this case, we have people, despite their youth, that, as they stand before the Court, have shown no inclination to change, or to show that they recognize the terrible damage they've done.  Why would you give a sentence that's going to let them out, even at some date in the future?  I ask the Court to make sure they stay where they are, and stay where they cannot hurt anybody else, and give them a sentence of life without parole.

(Emphasis added.)  It thus appears that the state was suggesting that for this defendant, youth was not a mitigating factor.

{¶ 26} The trial court stated:

Having tried this case and heard this case for four weeks, having had experience with Mr. Whipple and Mr. Clark, having observed also the violent history and record of Mr. Long, it's clear to me that all three defendants, for whatever reason, don't value human life.

I mean, the violence, senseless, just indiscriminate violence absolutely, as everyone has said here, absolutely no remorse. It's chilling. It's chilling to see you three stand here, and I have no doubt in my mind that if you walked out the door of this courtroom, you would kill again, and it wouldn't bother you. And that's sad, but it's true.

After considering the risks that you'll commit another offense, the need for protecting the public, nature and circumstances of these offenses, your history, character and condition, Court finds that prison sentences are required.

The trial court proceeded to impose sentence on each count, ordering all three defendants to serve life without parole on the aggravated-murder counts.

{¶ 27} This record is presented to show that Long raised his youth as a mitigating factor but that the state argued the opposite. Because the trial court did not separately mention that Long was a juvenile when he committed the offense, we cannot be sure how the trial court applied this factor. Although *Miller* does not require that specific findings be made on the record, it does mandate that a trial court *consider as mitigating* the offender's youth and its attendant characteristics before imposing a sentence of life without parole. For juveniles, like Long, a sentence of life without parole is the equivalent of a death penalty. *Miller*, 132 S.Ct. at 2463, 183 L.Ed.2d 407. As such, it is not to be imposed

lightly, for as the juvenile matures into adulthood and may become amenable to rehabilitation, the sentence completely forecloses that possibility.

{¶ 28} The record shows a group sentencing of three that included one defendant who was a juvenile at the time of the crime. Eric Long was situated differently but might not have been given the benefit of the consideration of youth as a mitigating factor. Therefore, his sentence did not comport with the newly announced procedural strictures of *Miller v. Alabama.* We therefore reverse the judgment of the First District and vacate Long's sentence of life in prison without the possibility of parole, and we remand the case to the trial court for resentencing.

### III. Conclusion

{¶ 29} The United States Supreme Court has indicated in *Roper*, *Graham*, and *Miller* that juveniles who commit criminal offenses are not as culpable for their acts as adults are and are more amenable to reform. We agreed with this sentiment in *In re C.P.*, 131 Ohio St.3d 513, 2012-Ohio-1446, 967 N.E.2d 729. *Miller* did not go so far as to bar courts from imposing the sentence of life without the possibility of parole on a juvenile. Yet because of the severity of that penalty, and because youth and its attendant circumstances are strong mitigating factors, that sentence should rarely be imposed on juveniles. *Miller*, ___ U.S. ___, 132 S.Ct. at 2469, 183 L.Ed.2d 407. In this case, the trial court must consider Long's youth as mitigating before determining whether aggravating factors outweigh it. We therefore reverse the judgment of the court of appeals and remand this cause to the trial court for resentencing.

Judgment reversed
and cause remanded.

O'CONNOR, C.J., and PFEIFER, FRENCH, and O'NEILL, JJ., concur.

O'DONNELL and KENNEDY, JJ., dissent.

_____

**O'CONNOR, C.J., concurring.**

{¶ 30} I concur in the majority's judgment, opinion, and syllabus.

{¶ 31} I write separately to make clear two important points upon which *all* members of this court agree:  a trial court must consider youth as a mitigating factor when formulating a sentence for a crime committed by a juvenile, but the court retains its broad discretion to determine how much weight to give that factor.  This appeal illustrates the tension in that equipoise.

{¶ 32} There is nothing novel about the fact that our youth commit murders and mayhem.  But the legal lens through which we view their sentencing has changed.

{¶ 33} The United States Supreme Court has made clear that courts must treat youths who commit murders and other serious crimes differently from adults who commit those same crimes.  *See, e.g., Miller v. Alabama,* ___ U.S. ___, 132 S.Ct. 2455, 183 L.Ed.2d 407 (2012) (holding that the imposition of mandatory life-without-parole sentences on individuals who committed murders while they were under the age of 18 violates the Eighth Amendment); *Graham v. Florida*, 560 U.S. 48, 130 S.Ct. 2011, 176 L.Ed.2d 825 (2010) (holding that imposition of life-without-parole sentences on juveniles who did not commit homicides violates the Eighth Amendment); *Roper v. Simmons*, 543 U.S. 551, 125 S.Ct. 1183, 161 L.Ed.2d 1 (2005) (holding that executions of individuals who were under the age of 18 when they committed their crimes violates the Eighth and Fourteenth Amendments).  In so doing, the court has reminded us, repeatedly, that "[a] child's age is far 'more than a chronological fact.' "  *J.D.B. v. North Carolina*, ___ U.S. ___, 131 S.Ct. 2394, 2403, 180 L.Ed.2d 310 (2011), quoting *Eddings v. Oklahoma*, 455 U.S. 104, 115, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982).  Indeed, the court has seemed frustrated that it has repeatedly noted to us that minors are less mature and responsible than adults, that they are lacking in experience, perspective, and judgment, and that they are more vulnerable and susceptible to

the pressures of peers than are adults. *See id*. at 2404. Generally stated, the rationale for the disparate treatment is that "juveniles have diminished culpability and greater prospects for reform" and " 'are less deserving of the most severe punishments.' " *Miller* at 2464, quoting *Graham* at 2026. We, as judges, must consider an offender's youth when determining which sentence to impose.

{¶ 34} But at the same time, the court has not suggested that courts cannot, or should not, impose significant sanctions on youthful offenders. To the contrary, it has recognized that it is "beyond question" that a youth who commits a murder deserves severe punishment. *Miller* at 2469. And it has held that a state is not required to guarantee eventual freedom to a juvenile offender convicted of a nonhomicide crime; the state need only offer a meaningful opportunity for the juvenile offender to be released, "based on demonstrated maturity and rehabilitation." *Graham* at 75.

{¶ 35} The constitutional question, then, is how much to consider an offender's youth, and how much to consider his crime. *See Graham* at 67.

{¶ 36} Ohio's sentencing scheme generally requires judges not only to protect the public, but also to punish and rehabilitate the offender by imposing sanctions that are commensurate with the offender's conduct and its impact on the victim. R.C. 2929.11(A) and (B). The General Assembly has afforded judges great discretion in fashioning proper sentences, constrained only by guideposts that require the sentencing judge to consider certain factors that help determine the seriousness of the crime and the likelihood of recidivism. R.C. 2929.12. Today, we reaffirm that discretion, but we add to the sentencing calculus by holding that an offender's youth must be an articulated consideration in the sentencing analysis, at least in cases in which life without parole is a potential sanction.

{¶ 37} Our syllabus and analysis are clear. Our holdings today make clear that a judge must separately consider youth as a mitigating factor and that the

record must clearly reflect that that consideration took place in sentencing an offender to life without parole for offenses committed as a minor. Those holdings are paramount. But in joining them, I caution that our law requires only that youth be considered as a factor. It does not mandate any particular result from that consideration.

{¶ 38} As a court of last resort, our role is to ensure that sentences meted out by a judge are sentences that comply with statutory commands and constitutional principles. It is not to second-guess decisions made by a trial judge on whether, on the facts, any offender, including youthful offenders, should be given a particular sentence.

{¶ 39} In remanding this cause, we do not opine on the merits of Long's sentence. We simply ensure that whatever sentence the judge imposes, even if the sentence remains the same, is imposed according to all protections the law affords the offender. Though "appropriate occasions for sentencing juveniles to [the] harshest possible penalty will be uncommon," *Miller,* 132 S.Ct. at 2469, 183 L.Ed.2d 407, they do arise.

{¶ 40} Reasonable minds will certainly differ as to which sentence is most fitting for Eric Long. But whether we believe that the juvenile justice system failed Long, or that Long failed the system, the result is the same: dead young men, wounded young men, incarcerated-for-life young men. None of us should take much solace in that.

_____

**O'DONNELL, J., dissenting.**

{¶ 41} I respectfully dissent.

{¶ 42} Eric Long was almost 18 years old when he, Fonta Whipple, and Jashawn Clark fired assault-style weapons into a dwelling in Lincoln Heights, striking Kyrie Maxberry in the face and Mark Keeling in the spine. Days later, he participated in the killing of Scott Neblett and Keith Cobb, both of whom were

shot to death with the same assault-style weapons while driving on Interstate 75 north of Cincinnati.

{¶ 43} A jury found him guilty of two counts of aggravated murder, three counts of felonious assault, two counts of having weapons while under disability, one count of improperly discharging a firearm into a habitation, one count of carrying concealed weapons, and various firearm specifications, and as a result, the trial court imposed a sentence of consecutive terms of life imprisonment without the possibility of parole on the murder counts plus an additional term of 19 years on the remaining counts and specifications, served consecutively. While there is no question that the United States Constitution permits the imposition of a sentence of life without parole on a juvenile offender convicted of murder in appropriate circumstances, the singular question presented here is whether the trial court *sufficiently indicated* that it had considered Long's youth to be a mitigating factor before imposing sentence.

{¶ 44} The *only* argument Long advanced in the trial court focused on the proposition that a juvenile offender's youth is a mitigating factor. In his sentencing memorandum in that regard, Long asserted, "The importance of treating a defendant's youth as a mitigating factor cannot be underestimated," and he noted that juveniles are less mature, more impetuous, and more susceptible to outside influence and psychological damage while also lacking the experience, judgment, and capacity to control their conduct. He maintained that youth crime is not exclusively the juvenile offender's fault, but represents a failure of family, school, and society. And he emphasized that his culpability is diminished by his youth, immaturity, and vulnerability to peer pressure from his adult codefendants. Thus, Long urged that he should not be sentenced to life in prison without the possibility of parole based on his chronological age (17 years and 9 months) at the time of his crimes.

**{¶ 45}** At the sentencing hearing, his defense counsel reiterated these same arguments, emphasizing that Long was a juvenile offender, contrasting his culpability with that of the adult codefendants and asking for "a glimmer of hope" and "a chance that some day he can return to society, hopefully a changed and rehabilitated man." The state agreed that "youth is usually a mitigating factor" but discounted it, given Long's "horrendous" juvenile record and his complete failure to show any interest in rehabilitation or to acknowledge the harm he caused.

**{¶ 46}** At sentencing, the trial court said that it had considered the "circumstances of [these] offenses, your history, character and condition," and it sentenced Long to life in prison without the possibility of parole. The First District Court of Appeals affirmed, concluding that the trial court had discretion to impose life with or without parole and "was able to consider whether Long's 'youth and its attendant characteristics, along with the nature of his crime, made a lesser sentence (for example, life with the possibility of parole) more appropriate.' " 2012-Ohio-3052, ¶ 52, quoting *Miller v. Alabama*, ___ U.S. ___, 132 S.Ct. 2455, 2460, 183 L.Ed.2d 407 (2012). The appellate court determined that the trial court had considered those factors, because defense counsel had focused on Long's youth as a mitigating factor and the trial court had stated it considered Long's "history, character and condition."

**{¶ 47}** This court accepted Long's discretionary appeal on one proposition of law: "The Eighth Amendment requires trial courts to consider youth as a mitigating factor when sentencing a child to life without parole for a homicide."

### Cruel and Unusual Punishment

**{¶ 48}** In construing the Eighth Amendment, the United States Supreme Court adopted categorical bans on sentencing practices specially focused on juvenile offenders based on their lesser culpability and greater potential for rehabilitation. In *Roper v. Simmons*, 543 U.S. 551, 578, 125 S.Ct. 1183, 161

L.Ed.2d 1 (2005), the court held that the Eighth Amendment prohibits the imposition of capital punishment on children under the age of 18. And in *Graham v. Florida,* 560 U.S. 48, 130 S.Ct. 2011, 176 L.Ed.2d 825 (2010), it concluded that the Eighth Amendment forbids a sentence of life without the possibility of parole for a juvenile convicted of a nonhomicide offense.

{¶ 49} Most recently, in *Miller v. Alabama*, ___ U.S. ___, 132 S.Ct. 2455, 2460, 183 L.Ed.2d 407, the court held that a state sentencing scheme that requires "mandatory life without parole for those under the age of 18 at the time of their crimes violates the Eighth Amendment's prohibition on 'cruel and unusual punishments.' "  Comparing sentences of life without parole for juvenile offenders to a death sentence, the United States Supreme Court applied its precedents demanding individualized sentencing in capital cases and required that the juvenile offender have "an opportunity to advance," and the sentencer have "a chance to assess," any mitigating factors. *Id.* at 2467.

{¶ 50} The court, however, declined to categorically bar the imposition of a sentence of life without the possibility of parole on juvenile offenders, explaining that "[a]lthough we do not foreclose a sentencer's ability to make that judgment in homicide cases, we require it to take into account how children are different, and how those differences counsel against irrevocably sentencing them to a lifetime in prison." *Miller* at 2469. Thus, the court determined that "a judge or jury *must have the opportunity to consider* mitigating circumstances before imposing the harshest possible penalty for juveniles." (Emphasis added.) *Id.* at 2475.

{¶ 51} Unlike the sentencing scheme invalidated in *Miller*, here, Long had "an opportunity to advance," and the trial court had "a chance to assess," Long's youth as a mitigating factor. Ohio does not have a mandatory penalty scheme that requires the trial court to sentence all offenders—juvenile and adult—to life without parole in these circumstances. Rather, R.C. 2929.03(A)(1) vests the trial

court with discretion to impose life imprisonment with or without the possibility of parole on an offender found guilty of aggravated murder. Thus, Ohio's sentencing statutes do not violate *Miller*, which struck down only those sentencing schemes that completely foreclose the consideration of the youth of a juvenile offender.

{¶ 52} Further, nothing in *Miller* prescribes the weight that the court must give this mitigating factor in imposing sentence; even in the context of capital sentencing, "the Constitution does not require a State to ascribe any specific weight to particular factors, either in aggravation or mitigation, to be considered by the sentencer." *Harris v. Alabama*, 513 U.S. 504, 512, 115 S.Ct. 1031, 130 L.Ed.2d 1004 (1995). Rather, as we explained in *State v. Jackson*, 107 Ohio St.3d 53, 2005-Ohio-5981, 836 N.E.2d 1173:

> We have long held that in imposing sentence, the assessment of and weight given to mitigating evidence are within the trial court's discretion. *State v. Lott* (1990), 51 Ohio St.3d 160, 171, 555 N.E.2d 293. "The fact that mitigation evidence is admissible 'does not automatically mean that it must be given any weight.' *State v. Steffen* (1987), 31 Ohio St.3d 111, 31 OBR 273, 509 N.E.2d 383, paragraph two of the syllabus." *State v. Mitts* (1998), 81 Ohio St.3d 223, 235, 690 N.E.2d 522.

*Id.* at ¶ 106. Thus, although a trial court is required to consider youth as a mitigating factor, it may exercise its discretion as to what weight it will give to that factor in connection with the other relevant sentencing factors.

{¶ 53} Nor does *Miller* require the court to explicitly state that it has considered any particular mitigating factor. And as we reiterated in *State v. Davis*, 116 Ohio St.3d 404, 2008-Ohio-2, 880 N.E.2d 31, ¶ 363, " 'While a

sentencing court must consider all evidence of mitigation, it need not discuss each factor individually.' *State v. Phillips* (1995), 74 Ohio St.3d 72, 102, 656 N.E.2d 643, citing *Parker v. Dugger* (1991), 498 U.S. 308, 314-315, 111 S.Ct. 731, 112 L.Ed.2d 812." Contrary to the majority's assertion, the trial court's failure to "separately mention that Long was a juvenile when he committed the offense" does not mean that "we cannot be sure how the trial court applied this factor" or otherwise conduct an effective review of the sentence. Majority opinion at ¶ 27. No one disputed that Long was a juvenile, and in any case, the Supreme Court recognized in *Clemons v. Mississippi,* 494 U.S. 738, 750, 110 S.Ct. 1441, 108 L.Ed.2d 725 (1990), that the sentencer need not make written findings concerning mitigating circumstances in order for an appellate court to perform an effective review.

{¶ 54} Significantly, in *Miller*, the court implicitly recognized that although the youth of a juvenile offender is a mitigating factor, the mitigating weight of youth necessarily decreases as the offender grows older; in fact, *Miller* noted that there are differences between a 14-year-old offender and a 17-year-old offender and directed courts "to take into account the differences among defendants and crimes." *Miller*, 132 S.Ct. at 2469, 183 L.Ed.2d 407, fn. 8. Yet here, Long was only three months shy of his 18th birthday, and he presented no concrete information about his personal background or family history that would have allowed the court to evaluate his mental condition and development, maturity, and relative culpability for his crimes. Long cannot fail to present specific mitigating evidence and then fault the trial court for not considering it. *Compare State v. Lott*, 97 Ohio St.3d 303, 2002-Ohio-6625, 779 N.E.2d 1011, ¶ 21 ("the burden of going forward with the evidence of a mental state, as a mitigating factor during a capital trial, is on the accused").

{¶ 55} It cannot be assumed that the trial court ignored Long's argument that his chronological age at the time of the offense, standing alone, sufficiently

mitigates his conduct to make a sentence of life without parole inappropriate. Rather, it is manifest that whatever significance the trial court attributed to Long's youth, it did not outweigh his "violent history and record," his lack of remorse and likelihood to "kill again," and the seriousness of his crimes, which involved firing assault-type weapons into an occupied dwelling and at occupants of a speeding vehicle, killing two persons and seriously injuring two others. In my view, the trial court carefully followed the law in this area and properly exercised its discretion in concluding that a sentence of life without the possibility of parole was appropriate in this case. I would therefore affirm the judgment of the court of appeals.

KENNEDY, J., concurs in the foregoing opinion.

_____

Joseph T. Deters, Hamilton County Prosecuting Attorney, and Ronald W. Springman, Chief Assistant Prosecuting Attorney, for appellee.

Timothy Young, Ohio Public Defender, and Stephen P. Hardwick, Assistant Public Defender, for appellant.

Michael DeWine, Attorney General, and Peter K. Glenn-Applegate, Deputy Solicitor, urging affirmance for amicus curiae Ohio Attorney General.

Marsha L. Levick, urging reversal for amicus curiae Juvenile Law Center.

Kilpatrick, Townsend & Stockton, L.L.P., and Gia L. Cincone, urging reversal for amicus curiae National Association of Criminal Defense Lawyers.

_____