[Cite as *State v. Jenkins*, 2021-Ohio-4100.]

COURT OF APPEALS
MUSKINGUM COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|                          |   | JUDGES:                     |
|--------------------------|---|-----------------------------|
| STATE OF OHIO            | : | Hon. Craig R. Baldwin, P.J. |
|                          | : | Hon. W. Scott Gwin, J.      |
| Plaintiff-Appellee       | : | Hon. William B. Hoffman, J. |
|                          | : |                             |
| -vs-                     | : |                             |
|                          | : | Case No. CT2021-0001        |
| JOHN JENKINS             | : |                             |
|                          | : |                             |
| Defendant-Appellant      | : | OPINION                     |

CHARACTER OF PROCEEDING:     Criminal appeal from the Muskingum County Court of Common Pleas, Case No. CR2019-0341

JUDGMENT:     Affirmed

DATE OF JUDGMENT ENTRY:     November 19, 2021

APPEARANCES:

For Plaintiff-Appellee

RONALD WELCH
Prosecuting Attorney
By: TAYLOR P. BENNINGTON
Assistant Prosecutor
27 North Fifth St., Box 189
Zanesville, OH 43702-0189

For Defendant-Appellant

JAMES ANZELMO
446 Howland Drive
Gahanna, OH 43230

*Gwin, J.,*

{¶1}   Defendant-appellant John A. Jenkins, Jr. [Jenkins"] appeals his conviction and sentence entered after a negotiated guilty plea in the Muskingum County Court of Common Pleas.

*Facts and Procedural History*

{¶2}   The following facts were entered into the record in open court during Jenkins's September 11, 2019 plea hearing.

{¶3}    On Sunday, May 26, 2019, Jenkins spent the day drinking. He obtained several beers from the State Street Market and he had been drinking enough that day that he was worried he had forgotten he left some beer out where his grandmother, Elizabeth Alvarez, who went by Betty, might have seen them. Plea T. at 13.

{¶4}   Betty had taken Jenkins in after he was released from prison three years ago. She did not approve of his drinking. She let him know about it when she discovered that he was drinking. She had a rule that he was not permitted to drink in the house, but he would do it anyway and he would hide it from her. On this day the situation was exacerbated by the fact that he was supervising his three-year-old little brother. His brother was in his room on the second floor. Jenkins came downstairs to make sure he had not left beer in the refrigerator. When Betty confronted him, she told Jenkins that he needed to get a job, he needed to move out of her house, and that it was getting to the point where she did not want him there anymore. Plea T. at 13-14. The pair got into a verbal altercation.    Jenkins went back upstairs to his brother's room. Betty came upstairs to retrieve Jenkins's three-year-old little brother. Betty told Jenkins that she did not want him to hurt his brother because he had been drinking. They got into another verbal

argument.   Jenkins warned his brother to stay with him and Betty wanting the child to come sleep in her room. Jenkins stated "I grabbed him from her, take him back up to the attic, told him to go to sleep. I shut the door. We get into another argument because I knew there was going to be a problem because she was going to -- she was not going to leave me alone, and that's when it happened." Plea T. at 14.

{¶5}   The verbal argument continued outside the child's bedroom.   Betty   was coming out of the bathroom. Jenkins was coming out of the bedroom. Jenkins punched Betty, she hit him with a small child's chair that was nearby on the floor. Jenkins knocked Betty down the stairs.

{¶6}   There are two sets of stairs in Betty's house. The stairs he knocked her down were referred to as the "servants' stairs." They are steep, made of wood and they lead into the kitchen with a sharp turn. When Betty got to the bottom, she was very badly injured.

{¶7}   Jenkins followed her down the stairs, and he saw her injuries. She was wheezing. He knew he had hurt her very badly. Rather than getting her help, he took his foot and he placed it on her throat as she wheezed, and he pressed down. Jenkins stood on Betty's throat eventually having to switch feet until he had suffocated the life out of Betty Alvarez. Jenkins then went back up to the attic where his three-year-old brother remained. He retrieved some plastic sheeting and came back downstairs. He wrapped Betty's body in the plastic, and he drug her body into the garage. He moved her car into the garage. When Rachel Sipple got back from her work shift that evening, which ended at 6:30 a.m., the two of them loaded Betty's body into the trunk of her car. Plea T. at 15.

{¶8}    The next morning John's sister, Mandy Jenkins, showed up at the house looking for Betty's car as if she had left something inside.  The car was not where it was normally parked. Mandy asked John where was Betty. Jenkins told her Betty was dead. Mandy did not believe him. Jenkins clarified that there had been an argument, he hit Betty in the face, and threw her to the ground. He told Mandy that every time Betty tried to get up from the ground, Betty tried to run for her phone. Jenkins told Mandy he put his foot on Betty's neck and left it there for ten minutes, and now her body was in the trunk of the car. According to Mandy, Jenkins told her, "If you weren't my sister, I would kill you right now." Jenkins then gave Mandy his little brother. Mandy took the child away to safety but did not call the police.

{¶9}    Later that day Jenkins and Sipple left for Columbus with Betty in the trunk. Sipple drove providing transportation and assisted Jenkins in knowing that he had committed a murder. Jenkins intended to take Betty to a farm somewhere near Columbus where he had once been invited for a program; however, he could not find it, so they found an abandoned stretch of roadway and dumped Betty's body in a water-filled ditch hoping she would not be found. Plea T. at 16.

{¶10}   Later the next day, which would be May 28, 2019, they decided to purchase a pellet gun and rob a Speedway in Columbus, which was being guarded by a uniformed Columbus police officer. They were both arrested after the officer shot at them and there was a chase and a crash. The next day, Mandy Jenkins called the Zanesville Police Department to report what she knew about Betty.

{¶11}   The Zanesville Police Department receiving a report that Betty might have been the victim of a murder immediately dedicated five detectives and two Ohio Bureau

of Criminal Investigation agents with the task of solving the crime. They discovered blood which had been cleaned up from the scene of the crime, plastic sheeting, and items matching described events. Plea T. at 17. When they confronted Jenkins, he immediately confessed to his actions. Sipple also confessed, albeit less readily.

{¶12} On May 30th of 2019, Jenkins led Columbus and Zanesville police detectives to Betty's body so that she could receive a proper burial. Plea T. at 17

{¶13} Jenkins was originally indicted for one count of aggravated murder, an unclassified felony; one count of tampering with evidence, a felony of the third degree; and one count of abuse of a corpse, a felony of the fifth degree.

{¶14} On September 11, 2019, Jenkins entered a plea of guilty to one count of aggravated murder.

{¶15} Jenkins requested a sentence of 20 years to life in prison so that he could go before the parole board and demonstrate whether he has been rehabilitated and amenable to parole. (Sent. T. Dec. 16, 2020 at 6). The prosecution requested a sentence of 30 years to life in prison. (Sent. T. Dec. 16, 2020 at. 4).Jenkins was sentenced to a mandatory prison term of life in prison without the possibility of parole.

*Assignments of Error*

{¶16} Jenkins raises three Assignments of Error,

{¶17} "I. JOHN JENKINS DID NOT KNOWINGLY, INTELLIGENTLY AND VOLUNTARILY PLEAD GUILTY, IN VIOLATION OF HIS DUE PROCESS RIGHTS UNDER THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND SECTION SIXTEEN, ARTICLE ONE OF THE OHIO CONSTITUTION.

**{¶18}** "II. JENKINS SENTENCE OF LIFE IN PRISON WITHOUT PAROLE VIOLATES THE EIGHTH AMENDMENT TO THE UNITED STATES CONSTITUTION.

**{¶19}** "III. JENKINS RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL, IN VIOLATION OF THE SIXTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND SECTION 10, ARTICLE I OF THE OHIO CONSTITUTION."

I.

**{¶20}** In his First Assignment of Error, Jenkins argue claims he did not knowingly, intelligently, and voluntarily plead guilty because the trial court did not explain the effect of his guilty plea, in other words, that his guilty plea was a complete admission of guilt. [Appellant's Brief at 2-3].

**Standard of Appellate Review**

**{¶21}** Crim. R. 11 requires guilty pleas to be made knowingly, intelligently and voluntarily.  Although literal compliance with Crim. R. 11 is preferred, the trial court need only "substantially comply" with the rule when dealing with the non-constitutional elements of Crim.R. 11(C).   *State v. Ballard*, 66 Ohio St.2d 473, 475, 423 N.E.2d 115(1981), *citing State v. Stewart*, 51 Ohio St.2d 86, 364 N.E.2d 1163(1977).

**{¶22}** When reviewing a plea's compliance with Crim.R. 11(C), we apply a de novo standard of review. *State v. Nero,* 56 Ohio St.3d 106, 108-109, 564 N.E.2d 474(1990); *State v. Lebron,* 8th Dist. Cuyahoga No. 108825, 2020-Ohio-1507, ¶9; *State v. Groves,* 5th Dist. Fairfield Nos. 2019 CA 00032, 2019 CA 00033, 2019-Ohio-5025,¶7.

**Issue for Appellate Review**: *Whether the record reflects that Jenkins's negotiated guilty plea would not have been entered if the trial judge had informed Jenkins orally at*

*the plea hearing that "[t]he plea of guilty is a complete admission of the defendant's guilt"*
*in accordance with Crim. R. 11(B)(1).*

{¶23} The constitutional rights that the trial court must advise a defendant who desires to enter a guilty plea are: (1) the right to a jury trial; (2) the right to confrontation of witnesses against him; (3) the right to compulsory process for obtaining witnesses in his favor; (4) that the state must prove the defendant's guilt beyond a reasonable doubt at trial; and (5) that the defendant cannot be compelled to testify against himself. *State v. Veney,* 120 Ohio St.3d 176, 2008-Ohio-5200, 897 N.E.2d 621, ¶ 19. If the trial court fails to strictly comply with these requirements, the defendant's plea is invalid. Id. at ¶ 31.

{¶24} The non-constitutional rights that the defendant must be informed of are: (1) the nature of the charges; (2) the maximum penalty involved, which includes, if applicable, an advisement on post-release control; (3) if applicable, that the defendant is not eligible for probation or the imposition of community control sanctions; and (4) that after entering a guilty plea or a no contest plea, the court may proceed directly to judgment and sentencing. Crim.R. 11(C)(2)(a)(b); *Veney* at ¶ 10-13; *State v. Sarkozy,* 117 Ohio St.3d 86, 2008-Ohio-509, 423 N.E.2d 1224, ¶ 19-26, (postrelease control is a non-constitutional advisement).

{¶25} For the non-constitutional rights, the trial court must substantially comply with Crim.R. 11's mandates. *State v. Nero,* 56 Ohio St.3d 106, 108, 564 N.E.2d 474 (1990). "Substantial compliance means that under the totality of the circumstances the defendant subjectively understands the implications of his plea and the rights he is waiving." *Veney* at ¶ 15. Furthermore, a defendant who challenges his guilty plea on the

basis that the advisement for the non-constitutional rights did not substantially comply with Crim.R. 11(C) must also show a prejudicial effect, meaning the plea would not have been otherwise entered. *Veney* at ¶ 15; *State v. Stewart*, 51 Ohio St.2d 86, 93, 364 N.E.2d 1163(1977); *State v. Griggs,* 103 Ohio St.3d 85, 2004-Ohio-4415, 814 N.E.2d 51, ¶12, *citing State v. Nero*, 56 Ohio St.3d at 107, 564 N.E.2d 474.

{¶26} The information that a guilty plea is a complete admission of guilt, along with the other information required by Crim.R. 11, ensures that defendants enter pleas with knowledge of rights that they would forgo and creates a record by which appellate courts can determine whether pleas are entered voluntarily. *See State v. Nero*, 56 Ohio St.3d 106, 107, 564 N.E.2d 474(1990); *see, also, State v. Ballard*, 66 Ohio St.2d 473, 479–480, 20 O.O.3d 397, 423 N.E.2d 115(1981).

{¶27} Crim.R. 11(B), captioned "Effect of guilty or no contest pleas," states that a plea of guilty "is a complete admission of the defendant's guilt." The right to be informed that a guilty plea is a complete admission of guilt is non-constitutional and therefore is subject to review under a standard of substantial compliance. *State v. Griggs,* 103 Ohio St.3d 85, 2004-Ohio-4415, 814 N.E.2d 51, ¶12, *citing* State *v. Nero*, 56 Ohio St.3d at 107, 564 N.E.2d 474.

{¶28} In the case at bar*,* before Jenkins entered his negotiated guilty plea in open court, Jenkins voluntarily signed a form titled "Plea of Guilty." The form was also signed by Jenkins's attorney and the prosecuting attorney. The form was filed with the trial court on September 11, 2019. [Docket Entry No. 14]. The form informed Jenkins,

> By pleading guilty I admit committing the offense and will tell the Court the facts and circumstances of my guilt...

{¶29}  The court received assurances from Jenkins and his counsel that Jenkins understood the content of the document and the consequences of waiving his rights. Plea T. at 4-5.  The prosecutor set forth the factual basis for Jenkins's guilty plea. Plea T. at 13-18. Jenkins did not object to the state's rendition of the facts. Jenkins did not protest his innocence, nor did Jenkins argue to the trial court that he was guilty of a lesser offense than aggravated murder. Jenkins entered his plea on September 11, 2019.  Jenkins was sentenced in open court on December 16, 2020. At no time during the four hundred sixty two days between his plea and his sentencing did Jenkins attempt to withdraw his negotiated guilty plea.

{¶30}  Jenkins does not argue, nor does he demonstrate by reference to the trial court record, that if the trial court had told him that his plea of guilty was a complete admission of his guilt, he would not have entered a guilty plea. Thus, Jenkins has failed to carry his burden to demonstrate that he would not have entered his negotiated guilty plea if the trial judge had informed him that his plea of guilty was a complete admission of his guilt.

{¶31}  As in *Stewart, Nero*, and *Griggs* the record here indicates that Jenkins understood the rights that he would waive by pleading guilty. The record in the case at bar demonstrates that Jenkins understood that by entering his guilty plea, he admitted to committing the crime of aggravated murder. In such circumstances, a court's failure to inform the defendant of the effect of his guilty plea as required by Crim.R. 11(B)(1) is presumed not to be prejudicial. *Griggs,* 103 Ohio St.3d 85 at ¶19.

{¶32}  Accordingly, we hold that Jenkins's entered a knowing, intelligent and voluntary guilty plea.

{¶33} Jenkins's First Assignment of Error is overruled.

II.

{¶34} In his Second Assignment of Error, Jenkins contends the trial court violated his Eighth Amendment right against cruel and unusual punishment by sentencing him to life without parole. Specifically, Jenkins argues that the trial court is required to make a finding on the record that that he is not amenable to rehabilitation before the court can sentence a defendant to life without the possibility of parole, citing *State v. Long* , 138 Ohio St.3d 478, 2014- Ohio-849. [Appellant's Brief at 4-5].

**Standard of Appellate Review**

{¶35} Jenkins was sentenced under R.C. 2929.03(A)(1)(a), the statutory section governing sentences for aggravated murder that do not include one or more specifications relating to aggravating circumstances (i.e., death-penalty specifications). R.C. 2953.08(D)(3) provides that "a sentence imposed for aggravated murder or murder pursuant to sections 2929.02 to 2020.06 of the Revised Code is not subject to review under this section." However, R.C. 2953.08(D)(3) is not the exclusive basis for appealing a sentence. *State v. Patrick,* 164 Ohio St.3d 952, 2020-Ohio-6803, 172 N.E.3d 952, ¶ 15. "Indeed R.C. 2953.02 also provides a right to appeal a judgment or final order to the court of appeals '[i]n a capital case in which a sentence of death is imposed for an offense committed before January 1, 1995, *and in any other criminal case * * *.*' (Emphasis added.) R.C. 2953.02 also provides, 'A judgment or final order of the court of appeals involving a question arising under the Constitution of the United States or of this state may be appealed to the supreme court as a matter of right.' The final judgment for purposes of appeal under R.C. 2953.02 is the sentence." *Patrick* at ¶ 16. Therefore, R.C.

2953.08(D)(3) does not preclude an appellate court's review of a constitutional challenge to a sentence for aggravated murder or murder. Id. at ¶ 22.

{¶36} Accordingly, Jenkins's argument centers on an issue of law, not the discretion of the trial court. "'When a court's judgment is based on an erroneous interpretation of the law, an abuse-of-discretion standard is not appropriate. *See Swartzentruber v. Orrville Grace Brethren Church,* 163 Ohio App.3d 96, 2005-Ohio-4264, 836 N.E.2d 619, ¶ 6; *Huntsman v. Aultman Hosp.*, 5th Dist. No. 2006 CA 00331, 2008-Ohio-2554, 2008 WL 2572598, ¶ 50.' *Med. Mut. of Ohio v. Schlotterer*, 122 Ohio St.3d 181, 2009-Ohio-2496, 909 N.E.2d 1237, ¶ 13." *State v. Fugate,* 117 Ohio St.3d 261, 2008-Ohio-856, 883 N.E.2d 440, ¶6. Because the assignment of error involves the interpretation of the constitution, which is a question of law, we review the trial court's decision de novo. *See, Med. Mut. of Ohio v. Schlotterer*, 122 Ohio St.3d 181, 2009-Ohio-2496, 909 N.E.2d 1237, ¶ 13; *Accord, State v. Pariag,* 137 Ohio St.3d 81, 2013-Ohio-4010, 998 N.E.2d 401, ¶ 9; *Hurt v. Liberty Township, Delaware County, OH,* 5th Dist. Delaware No. 17 CAI 05 0031, 2017-Ohio-7820, ¶ 31.

**Issue for Appellate Review:** *Whether Jenkins's sentence is so grossly disproportionate to the offense as to shock the sense of justice in the community.*

{¶37} The Eighth Amendment to the United States Constitution prohibits "[e]xcessive" sanctions. It provides: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."

{¶38} Section 9, Article I of the Ohio Constitution sets forth the same restriction: "Excessive bail shall not be required; nor excessive fines imposed; nor cruel and unusual punishments inflicted."

{¶39} "The Eighth Amendment does not require strict proportionality between crime and sentence. Rather, it forbids only extreme sentences that are grossly disproportionate" to the crime. *State v. Weitbrecht*, 86 Ohio St.3d 368, 373, 715 N.E.2d 167(1999), *quoting Harmelin v. Michigan,* 501 U.S. 957, 1001, 111 S.Ct. 2680(1991), (Kennedy, J., concurring in part and in judgment). A court's proportionality analysis under the Eighth Amendment should be guided by objective criteria, including (i) the gravity of the offense and the harshness of the penalty; (ii) the sentences imposed on other criminals in the same jurisdiction; and (iii) the sentences imposed for commission of the same crime in other jurisdictions. (Footnotes omitted.)" *Solem v. Helm*, 463 U.S. 277, 290–292, 103 S.Ct. 3001, 3010–3011, 77 L.Ed.2d 637, 649–650(1983). (Internal quotation marks omitted).

{¶40} It is well established that sentences do not violate these constitutional provisions against cruel and unusual punishment unless the sentences are so grossly disproportionate to the offenses as to shock the sense of justice in the community. *State v. Chaffin*, 30 Ohio St.2d 13, 59 O.O.2d 51, 282 N.E.2d 46(1972). *Accord, State v. Blankenship,* 145 Ohio St.3d 221, 2015-Ohio-4624, 48 N.E.3d 516, ¶32.

{¶41} As a general rule, a sentence that falls within the terms of a valid statute cannot amount to a cruel and unusual punishment. *State v. Stevens*, 5th Dist. Stark No. 2017CA00024, 2017-Ohio-8692, ¶ 10, *quoting McDougle v. Maxwell*, 1 Ohio St.2d 68, 69, 203 N.E.2d 334 (1964).

{¶42} In the case at bar, the facts of the crime read into the record by the prosecutor establish that Jenkins struck his grandmother and caused her to fall down a flight of stairs. Upon seeing her injured and incapacitated at the bottom of the stairwell,

Jenkins, instead of calling for help, callously, intentionally and with utter disregard for the elderly woman sprawled helplessly at his feet, placed his foot upon her neck.  As she writhed in pain, he intentionally and nonchalantly changed feet when the one squeezing the life out of the helpless woman grew tired.  It took Jenkins about ten minutes to squeeze the life out of Betty. At any point prior, Jenkins could have stopped and summoned help. He did not. Rather, he wrapped Betty's body in plastic and dumped it in a water filled ditch alongside the road.  He told Mandy that he would immediately kill her if she were not his sister.  Shortly thereafter he attempted to rob a convenience store and flee the jurisdiction.

{¶43}  There is no evidence in the record that the judge acted unreasonably by, for example, selecting the sentence arbitrarily, basing the sentence on impermissible factors, failing to consider pertinent factors, or giving an unreasonable amount of weight to any pertinent factor. We find nothing in the record of Jenkins's case to suggest that his sentence was based on an arbitrary distinction that would violate the Due Process Clause of the Fifth Amendment. *State v. Firouzmandi*, 5th Dist.  Licking App. No. 2006–CA–41, 2006–Ohio–5823, ¶ 43. Jenkins does not challenge his sentence as out of line with other sentences from this or other jurisdictions, nor does he argue he was not sentenced within a range permitted by statute.

{¶44}  Upon our review of the record, we cannot say Jenkins's sentence is "so disproportionate to the offense as to shock the moral sense of the community." *Chaffin, supra.*

{¶45}  Jenkin's reliance upon *State v. Long*, 138 Ohio St.3d 478, 2014- Ohio-849 is misplaced. Long was convicted as a juvenile and sentenced to life without parole. The Court in *Long* noted,

In *Miller,* the United States Supreme Court began by reviewing its previous decisions regarding the sentencing of juveniles.

*Roper* and *Graham* establish that children are constitutionally different from adults for purposes of sentencing. Because juveniles have diminished culpability and greater prospects for reform, we explained, "they are less deserving of the most severe punishments." *Graham,* 560 U.S. at 68, 130 S.Ct. at 2026, 176 L.Ed.2d 825. Those cases relied on three significant gaps between juveniles and adults. First, children have a "'lack of maturity and an underdeveloped sense of responsibility,' " leading to recklessness, impulsivity, and heedless risk-taking. *Roper*, 543 U.S., at 569, 125 S.Ct. 1183, 161 L.Ed.2d 1. Second, children "are more vulnerable * * * to negative influences and outside pressures," including from their family and peers; they have limited "contro[l] over their own environment" and lack the ability to extricate themselves from horrific, crime-producing settings. Ibid. And third, a child's character is not as "well formed" as an adult's; his traits are "less fixed" and his actions less likely to be "evidence of irretrievabl[e] deprav [ity]." Id., at 570, 125 S.Ct. 1183, 161 L.Ed.2d 1.

*Miller,* ―― U.S. ――, 132 S.Ct. at 2464, 183 L.Ed.2d 407.

*Long,* 138 Ohio St.3d 478 at ¶12.

{¶46} The Supreme Court concluded,

The United States Supreme Court has indicated in *Roper, Graham,* and *Miller* that juveniles who commit criminal offenses are not as culpable for their acts as adults are and are more amenable to reform. We agreed

with this sentiment in *In re C.P.*, 131 Ohio St.3d 513, 2012-Ohio-1446, 967 N.E.2d 729. *Miller* did not go so far as to bar courts from imposing the sentence of life without the possibility of parole on a juvenile. Yet because of the severity of that penalty, and because youth and its attendant circumstances are strong mitigating factors, that sentence should rarely be imposed on juveniles. *Miller*, —— U.S. ——, 132 S.Ct. at 2469, 183 L.Ed.2d 407. In this case, the trial court must consider Long's youth as mitigating before determining whether aggravating factors outweigh it. We therefore reverse the judgment of the court of appeals and remand this cause to the trial court for resentencing.

*Long,* 138 Ohio St.3d 478 at ¶29.

Jenkins has cited absolutely no authority in support of his contention that a trial court must make a finding on the record that that he is not amenable to rehabilitation before the court can sentence an *adult* offender to life without the possibility of parole.

{¶47} We find the sentence of the trial court is supported by the record and does not violate the constitutional prohibition against cruel and unusual punishment.

{¶48} Jenkins's Second Assignment of Error is overruled.

III.

{¶49} In his Third Assignment of Error, Jenkins argues that he was denied effective assistance of trial counsel because trial counsel failed to present any evidence to support any mitigating factors such as psychological reports or witness statements in order to support the trial court's imposition of a twenty year sentence instead of a life sentence.

**Standard of Appellate Review – Ineffective Assistance of Counsel**

**{¶50}**  To prevail on a Sixth Amendment claim alleging ineffective assistance of counsel, a defendant must show that his counsel's performance was deficient and that his counsel's deficient performance prejudiced him. *Strickland v. Washington*, 466 U.S. 668, 694 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To show deficiency, a defendant must show that "counsel's representation fell below an objective standard of reasonableness." Id., at 688, 104 S.Ct. 2052.  And to establish prejudice, a defendant must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Id., at 694, 104 S.Ct. 2052.  *Andtus v. Texas,* 590 U.S. __, 140 S.Ct. 1875, 1881 (June 15, 2020).

**Issue for Appellate Review:** *Whether there is a reasonable probability that, but for counsel's failure to present evidence of mitigating factors the result of the proceeding would have been different.*

**{¶51}**  Jenkins claim that his attorney could have produced expert witnesses, psychological reports or character witnesses that would have swayed the trial court to impose a twenty-year sentence is based upon pure speculation.

**{¶52}**  "'The presentation of mitigating evidence is a matter of trial strategy,' *State v. Bryan*, 101 Ohio St.3d 272, 2004-Ohio-971, 804 N.E.2d 433, ¶ 189, even if counsel's chosen strategy proves unsuccessful, *State v. Frazier*, 61 Ohio St.3d 247, 255, 574 N.E.2d 483 (1991)." *State v. McKelton*, 148 Ohio St.3d 261, 2016-Ohio-5735, 70 N.E.3d 508, ¶ 304.

**{¶53}**  "Debatable trial tactics do not establish ineffective assistance of counsel." *State v. Hoffner*, 102 Ohio St.3d 358, 365, 2004–Ohio–3430(2004), ¶45. Trial counsel's

failure to request an expert is a "debatable trial tactic," and does not amount to ineffective assistance of counsel. *See State v. Thompson* (1987), 33 Ohio St.3d 1, 9, 514 N.E.2d 407 (trial counsel's failure to obtain a forensic pathologist to "rebut" the issue of rape was not ineffective assistance of counsel); *State v. Foust*, 105 Ohio St.3d 137, 153–154, 2004–Ohio–7006, 823 N.E.2d 836, ¶¶ 97–99 (trial counsel's failure to request funds for a DNA expert, an alcohol and substance-abuse expert, a fingerprint expert, and an arson expert did not amount to ineffective assistance of counsel because appellant's need for experts was "highly speculative" and counsel's choice "to rely on cross-examination" of prosecution's expert was a "legitimate tactical decision"); *State v. Yarger*, 6th Dist. No. H–97–014, 1998 WL 230648 (May 1, 1998) (trial counsel's failure to hire an expert medical doctor to rebut state's expert witness was not ineffective assistance of trial counsel); *State v. Rutter*, 4th Dist. No. 02CA17, 2003–Ohio–373, ¶ 19, 28 (trial counsel's failure to hire an accident re-constructionist did not amount to ineffective assistance of counsel).

{¶54} "In order to obtain a reversal on ineffective assistance of counsel based on a failure to subpoena a witness, a defendant must demonstrate that the testimony of the witness would be of significant assistance to the defense." *State v. Reese*, 8 Ohio App.3d 202, 203, 456 N.E.2d 1253 (1st Dist. 1982). *Accord, State v. Varner*, 5th Dist. No. 98CA00016, 1998 WL 667620 (Sept. 14, 1998). We note the record is devoid of a proffer of the testimony of any purported witnesses. Based upon the status of the record presently before this Court, we find Jenkins is unable to demonstrate the testimony would have been of significant assistance to his defense.

{¶55} Jenkins's counsel did argue that Jenkins's mother had died shortly before his crime, that he was relatively young at 28 years old, and that Jenkins had a drinking problem.    Sent. T. at 4-6. Jenkins made a statement to the trial judge during the sentencing hearing. Sent. T. at 8.  Further, the trial court had the benefit of a Pre-Sentence Investigation report. Sent. T. at 8-9. The trial court received 58 letters from Betty's family and friends. Id. at 10.

{¶56} Trial counsel made an argument on Jenkins's behalf for a lesser sentence. The fact that the trial court did not agree does not mean that defense counsel was ineffective in the attempt to obtain a more favorable sentence.

{¶57} Jenkins has failed to show that the presentation of additional evidence would have resulted in the trial court imposing a lesser sentence. Therefore, Jenkins has failed to establish that he has been prejudice by trial counsel's performance.

{¶58}   Jenkins's Third Assignment of Error is overruled.

{¶59}   The judgment of the Muskingum County Court of Common Pleas is affirmed.

By Gwin, J.,

Baldwin, P.J., and

Hoffman, J, concur