**[Cite as *State v. Roark*, 2015-Ohio-3811.]**

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## MERCER COUNTY

**STATE OF OHIO,**                                                    **CASE NO. 10-14-11**

    **PLAINTIFF-APPELLEE,**

    **v.**

**TREVIN M. SANDERS ROARK,**                          **O P I N I O N**

    **DEFENDANT-APPELLANT.**

**Appeal from Mercer County Common Pleas Court**
**Trial Court No. 13-CRM-092**

**Judgment Affirmed**

**Date of Decision:  September 21, 2015**

**APPEARANCES:**

    *Stephen A. Goldmeier* **for Appellant**

    *Matthew K. Fox* **for Appellee**

**WILLAMOWSKI, J.**

{¶1} Defendant-appellant Trevin M. Sanders Roark ("Appellant") brings this appeal from the judgment of the Court of Common Pleas of Mercer County. Appellant claims that the trial court erred in sentencing him to consecutive life sentences without the opportunity for parole and by requiring that his case be transferred to adult court. For the reasons set forth below, the judgment is affirmed.

{¶2} In November 2011, Appellant, Bryant Rhoades ("Rhoades") and additional unknown accomplices forcefully entered the home of Robert Grube ("Robert") and his daughter Colleen Grube ("Colleen"). Robert was 70 years old at the time and was confined to a wheelchair. Colleen was 47 years old at the time and provided care for Robert. Appellant and the other assailants targeted the home to obtain money to support their methamphetamine addiction and even stopped on their way to the house to get "high". Once they forced their way into the home, the assailants duct-taped Robert into his wheelchair and duct-taped Colleen and put her on the couch. The assailants held the pair at gunpoint to prevent them from escaping. The assailants then ransacked the home searching for items to steal. Appellant then fired several shots into Colleen, killing her. After killing Colleen, Appellant gave the gun to Rhoades knowing that Rhoades intended to kill

Robert with it and Rhoades then did so. The purpose for the killings was to prevent Robert and Colleen from identifying them.

**{¶3}** On March 26, 2013, a 27-count complaint was filed in the Juvenile Division of the Mercer County Court of Common Pleas. J.Doc. 1.[1] The next day the State filed a motion to transfer the proceedings to the Criminal Division, based on the charges contained in the complaint. J.Doc. 7. A probable cause hearing was held in the Juvenile Court on June 7, 2013. J.Doc. 29. The Juvenile Court found that Appellant's date of birth was in April, 1994, which made him 17 years old at the time of the offense. *Id.* The court also found that there was probable cause to believe that Appellant had committed the offenses stated in the complaint and that due to the nature of the offenses charged, the court was required to bind Appellant over to the Criminal Division of the court for prosecution as an adult. *Id.*

**{¶4}** On June 10, 2013, the Mercer County Grand Jury indicted Appellant on twenty-seven counts: 1) two counts of Aggravated Murder in violation of R.C. 2903.01(A) with firearm specifications; 2) two counts of Aggravated Murder in violation of R.C. 2903.01(B) with firearm specifications; 3) two counts of Murder in violation of R.C. 2903.02(A) with firearm specifications; 4) two counts of Murder in violation of R.C. 2903.02(B) with firearm specifications; 5) two counts

---

[1] The juvenile court's docket was incorporated into the docket as items 1 and 2. For the purpose of clarity, the items from that docket will be identified as J.Doc. and the number. Items from the Criminal Division shall be identified as Doc. and the number.

of Involuntary Manslaughter in violation of R.C. 2903.04(A) with firearm specifications; 6) two counts of Kidnapping in violation of R.C. 2905.01(A)(2) with firearm specifications; 7) two counts of Kidnapping in violation of R.C. 2905.01(A)(3) with firearm specifications; 8) two counts of Aggravated Robbery in violation of R.C. 2911.01(A)(1) with firearm specifications; 9) two counts of Aggravated Robbery in violation of R.C. 2911.01(A)(3) with firearm specifications; 10) two counts of Aggravated Burglary in violation of R.C. 2911.11(A)(1) with firearm specifications; 11) two counts of Aggravated Burglary in violation of R.C. 2911.11(A)(2) with firearm specifications; 12) two counts of Burglary in violation of R.C. 2911.12(A)(1) with firearm specifications; 13) two counts of Theft in violation of R.C. 2913.02(A)(1) with firearm specifications; and one count of Theft in violation of R.C. 2913.02(A)(1);(B)(4) with a firearm specification. Doc. 3. Appellant was arraigned on July 2, 2013, and entered pleas of not guilty to all counts of the indictment. Doc. 19.

{¶5} On February 27, 2014, a hearing was held for Appellant to change his plea from not guilty to guilty on some of the charges pursuant to a negotiated plea agreement. Doc. 61. Appellant agreed to enter guilty pleas to Counts One and Two of Aggravated Murder with firearm specifications, Counts Fifteen and Sixteen of Aggravated Robbery without specifications, and Counts Nineteen and Twenty of Aggravated Burglary without specifications. *Id.* In return, the State agreed to enter a nolle prosequi as to all remaining counts and the firearm

specifications for the Aggravated Robbery and Aggravated Burglary charges. *Id.* The trial court accepted the pleas of guilty and following an undisputed statement of the facts and circumstances surrounding the charges, found Appellant to be guilty. Doc. 64. Prior to sentencing, the State and Appellant entered into a stipulation of facts and law regarding merger. Doc. 91. They agreed that the firearm specifications on Counts One and Two arose out of the same transaction and merged, with the State electing to have Appellant sentenced on the specification for Count Two. *Id.* They also agreed that Counts Fifteen and Sixteen merged as did Counts Nineteen and Twenty. *Id.* The State elected to proceed to sentencing on Counts Sixteen and Count Nineteen. *Id.*

{¶6} A sentencing hearing was held on August 19, 2014. Doc. 92. The trial court indicated that Appellant would be sentenced on Count One with a firearm specification, Count Two, Count Sixteen, and Count Nineteen. *Id.* The trial court then sentenced Appellant to serve a prison term of life without possibility of parole for Counts One and Two, with the sentence for Count Two to be served consecutive to that of Count One. *Id.* The trial court then ordered Appellant to serve a three year prison term for the gun specification, to be served consecutive to Counts One and Two. *Id.* For Counts Sixteen and Nineteen, the trial court ordered Appellant to serve prison terms of eleven years each, to be served consecutively to each other as well as Counts One and Two. *Id.* Appellant

filed his notice of appeal from this judgment on September 18, 2014.  Doc. 113.

On appeal, Appellant raises the following assignments of error.

**First Assignment of Error**

**Because the record does not support [Appellant's] two consecutive life-without-parole sentences, the trial court abused its discretion in imposing them.**

**Second Assignment of Error**

**[Appellant's] mandatory transfer to adult court pursuant to R.C. 2152.10(A)(1)(a) and 2152.12(A)(1)(a) violates his right to due process, to equal protection, and to be free from cruel and unusual punishment.**

In the interest of clarity, we will address the second assignment of error first.

**{¶7}** In the second assignment of error, Appellant challenges his mandatory transfer to adult court.  Appellant claims that the mandatory nature of the statute is a due process violation because it removes the juvenile court's ability to make individualized determinations regarding transfer.  Appellant also claims that the mandatory transfer rule violates his right to equal protection under the law by treating similarly situated juveniles of different ages differently.  Finally, Appellant claims that the mandatory transfer violates his right to be free from cruel and unusual punishment by creating a mandatory sentencing scheme.

**{¶8}** In this case, the transfer of Appellant from the juvenile court to the adult court was controlled by R.C. 2152.10 and R.C. 2152.12.

**(A) A child who is alleged to be a delinquent child is eligible for mandatory transfer and shall be transferred as provided in**

**section 2152.12 of the Revised Code in any of the following circumstances:**

**(1) The child is charged with a category one offense and either of the following apply:**

**(a) The child was sixteen years of age or older at the time of the act charged.**

**\* \* \***

**(2) The child is charged with a category two offense, other than a violation of section 2905.01 of the Revised Code, the child was sixteen years of age or older at the time of the commission of the act charged, and either or both of the following apply:**

**\* \* \***

**(b) The child is alleged to have had a firearm on or about the child's person or under the child's control while committing the act charged and to have displayed the firearm, brandished the firearm, indicated possession of the firearm, or used the firearm to facilitate the commission of the act charged.**

**(3) Division (A)(2) of section 2152.12 of the Revised Code applies.**

R.C. 2152.10. A "category one offense" includes violations of R.C. 2903.01 and

2903.02. R.C. 5152.02(BB)(1). A "category two offense" includes violations of

R.C. 2903.04, 2905.01, 2911.01, and 2911.11. R.C. 2152.02(CC).

**(A)(1)(a) After a complaint has been filed alleging that a child is a delinquent child for committing an act that would be aggravated murder, murder, attempted aggravated murder, or attempted murder if committed by an adult, the juvenile court at a hearing shall transfer the case if either of the following applies:**

**(i)  The child was sixteen or seventeen years of age at the time of the act charged and there is probable cause to believe that the child committed the act charged.**

**\* \* \***

**(b) After a complaint has been filed alleging that a child is a delinquent child by reason of committing a category two offense, the juvenile court at a hearing shall transfer the case if the child was sixteen or seventeen years of age at the time of the act charged and either of the following applies:**

**\* \* \***

**(ii) Division (A)(2)(b) of section 2152.10 of the Revised Code requires the mandatory transfer of the case, and there is probable cause to believe that the child committed the act charged.**

R.C. 2152.12.

{¶9} Appellant was charged with violations of R.C. 2903.01 and 2903.02, which are category one offenses.  He was seventeen years of age at the time of the offense.  Therefore, pursuant to R.C. 2152.10(A) and R.C. 2152.12(A), the trial court was required to transfer Appellant to the general division of the court.  Likewise, Appellant was charged with several category two offenses which also would have mandated a transfer to the general division of the court.

{¶10} Appellant claims that the mandatory nature of R.C. 2152.10 and 2152.12 violate his constitutional rights to due process, equal protection, and to be free from cruel and unusual punishments.  The Supreme Court of Ohio addressed a similar case in *State v. Quarterman*, 140 Ohio St.3d 464, 2014-Ohio-4034, 19

N.E.3d 900. In *Quarterman*, the defendant was transferred to the adult courts after the juvenile court determined that there was probable cause to believe that he had committed acts which would be aggravated robbery with a firearm if he were an adult. *Id.* at ¶6. Quarterman eventually pled guilty to one count of aggravated robbery and the trial court accepted this plea and imposed the jointly recommended sentence. In his appeal, Quarterman claimed for the first time that the mandatory bindover procedures set forth in R.C. 2152.10 and 2152.12 violated his rights to due process and equal protection and the prohibition against cruel and unusual punishment. *Id.* at ¶9. The Ninth District held that by pleading guilty, Quarterman had waived his right to challenge the mandatory bindover. *Id.* Quarterman appealed to the Supreme Court, which accepted the discretionary appeal. On appeal, Quarterman raised similar arguments to those raised here. *Id.* at ¶ 11-12.

{¶11} The Court in *Quarterman* did not reach the merits of Quarterman's appeal. Instead the Court focused on whether Quarterman had raised the issue prior to appeal.

> **It is a well-established rule that "'an appellate court will not consider any error which counsel for a party complaining of the trial court's judgment could have called but did not call to the trial court's attention at a time when such error could have been avoided or corrected by the trial court.'" * * * As we explained in [*State v. Awan*, 22 Ohio St.3d 120, 489 N.E.2d 277 (1986)], "the question of the constitutionality of a statute must generally be raised at the first opportunity and, in a criminal prosecution, this means in the trial court." * * * Quarterman forfeited his**

> **constitutional challenges to R.C. 2152.10(A)(2)(b) and 2152.12(A)(1)(b) by failing to object to the mandatory bindover procedures in either the juvenile court or the general division of the common pleas court.**

*Id.* at ¶15 (citations omitted).  The Court concluded that since Quarterman had failed to preserve the issue of the constitutionality of R.C. 2152.10 and 2152.12, the matter is not proper on appeal and would not be addressed.  *Id*. at 22.

{¶12} In this case, the situation is almost identical.  The State filed a motion in the juvenile court to transfer the case to adult court and a hearing was held on the motion.  At no time before the hearing or during the hearing did Appellant raise the issue of the constitutionality of the mandatory transfer statutes with the juvenile court.  The case was transferred to the general division where Appellant was tried as an adult.  At no time before the trial court did Appellant raise the issue of the constitutionality of R.C. 2152.10 or 2152.12.  The first time this issue was raised was on appeal.  Pursuant to the holding in *Quarterman*, these issues cannot be raised for the first time on appeal.  By not raising them in either the juvenile court or the trial court, Appellant has forfeited the right to raise this issue.  Thus, this court need not address them.  The second assignment of error is overruled.

{¶13} Appellant claims in the first assignment of error that the trial court erred in sentencing him to consecutive life sentences without the opportunity for parole.  This court initially notes that R.C. 2953.08(D)(3) prohibits review of a sentence imposed for aggravated murder.  *See State v. Hawkins*, 4th Dist. Gallia

No. 13CA3, 2014-Ohio-1224; *State v. Jones*, 2d Dist. Clark No. 2012 CA 61, 2013-Ohio-4820; and *State v. Patterson*, 5th Dist. Stark No. 2012CA00098, 2013-Ohio-1647. This statutory limitation on appeal has been in existence since 1996. Appellant was convicted of two counts of aggravated murder and the sentence imposed was within the statutory limits. Thus, his sentence is not subject to appellate review pursuant to R.C. 2953.08(D)(3). However, courts, including the Supreme Court of Ohio, do sometimes address these sentences regardless of the statute. *See State v. Long*, 138 Ohio St.3d 478, 2014-Ohio-849, 8 N.E.2d 890; *State v. Long*, 1st Dist. Hamilton No. C-140398, 2015-Ohio-2114 (upon remand from the Supreme Court after first addressing the issue in the case that was reviewed by the Supreme Court); *State v. Lane*, 11th Dist. Geauga No. 2013-G-3144, 2014-Ohio-2010; and *State v. Harwell*, 149 Ohio App.3d 147, 2002-Ohio-4349, 776 N.E.2d 524 (6th Dist.). In the interest of justice we will address the merits of the appeal to the sentence as well.

{¶14} The issue of imposing life sentences without the possibility of parole has been addressed frequently in the last few years. The first major case to address the issue was *Graham v. Florida*, 560 U.S. 48, 130 S.Ct. 2011, 176 L.Ed.2d 825 (2010). In *Graham*, the defendant committed armed burglary and another crime while he was 16 years old. *Id*. at 48. The defendant entered a plea agreement which placed him on probation and withheld an adjudication of guilt. *Id*. Later, the defendant violated the terms of his probation by committing another

crime and his probation was revoked. *Id.* The trial court then adjudicated him as guilty of the earlier charge and sentenced him to life in prison for the burglary. *Id.* Because Florida has no parole system, the life sentence left the defendant with no possibility of release except executive clemency. *Id.* The defendant then appealed his sentence as being cruel and unusual punishment in violation of the Eighth Amendment. *Id.*

{¶15} The U.S. Supreme Court addressed the issue and stated that pursuant to the Eighth Amendment, punishments "must respect the human attributes even of those who have committed serious crimes." *Id.* at 59. This includes insuring that the punishment is not disproportionate to the crime. *Id.* The Court stated that an attempt to express the community's moral outrage or to right the balance for the wrong to the victim, the sentencing goal of retribution is not as strong with a minor as it would be with an adult. *Id.* at 71. Likewise, the Court determined that the sentencing goal of deterrence does not justify a life sentence without the possibility of parole because for the same reason that juveniles are less culpable than adults, juveniles will be less susceptible to deterrence. *Id.* at 72. "Because juveniles' 'lack of maturity and underdeveloped sense of responsibility * * * often result in impetuous and ill-considered actions and decisions,' *Johnson v. Texas*, 509 U.S. 350, 367, 113 S.Ct. 26658, 125 L.Ed.2d 290 (1993), they are less likely to take a possible punishment into consideration when making decisions." *Graham, supra* at 72. The Court then addressed the sentencing goal of

incapacitation and determined that it was not a justifiable reason for a sentence of life in prison for a non-homicide offense. *Id.*

> **To justify life without parole on the assumption that the juvenile offender forever will be a danger to society requires the sentencer to make a judgment that the juvenile is incorrigible. The characteristics of juveniles make that judgment questionable. "It is difficult even for expert psychologists to differentiate between the juvenile offender whose crime reflects unfortunate yet transient immaturity, and the rare juvenile offender whose crime reflects irreparable corruption." \* \* \* As one court concluded in a challenge to a life without parole sentence for a 14-year-old, "incorrigibility is inconsistent with youth."**

*Id*. at 72-73 (citations omitted). Finally, the Court addressed the sentencing goal of rehabilitation.

> **A sentence of life imprisonment without parole, however, cannot be justified by the goal of rehabilitation, the penalty forswears altogether the rehabilitative ideal. By denying the defendant the right to reenter the community, the State makes an irrevocable judgment about that person's value and place in society. This judgment is not appropriate in light of a juvenile nonhomicide offender's capacity for change and limited moral culpability. A State's rejection of rehabilitation, moreover goes beyond a mere expressive judgment. As one *amicus* notes, defendants serving life without parole sentences are often denied access to vocational training and other rehabilitative services that are available to other inmates. \* \* \* For juvenile offenders, who are most in need of and receptive to rehabilitation, \* \* \* the absence of rehabilitative opportunities or treatment makes the disproportionality of the sentence all the more evident.**

*Id*. at 74. The Court then concluded that the Eighth Amendment prohibited the sentence of life without parole for an offender who did not commit homicide. *Id.* The Court went on to state that "[a]n offender's age is relevant to the Eighth

Amendment, and criminal procedure laws that fail to take defendant's youthfulness into account at all would be flawed." *Id*. at 76.

{¶16} In 2012, the U.S. Supreme Court again addressed the issue of life sentences without parole for juvenile in the case of *Miller v. Alabama*, ___ U.S. ___, 132 S.Ct. 2455, 183 L.Ed.2d 407 (2012). *Miller* was a case that involved two defendants: Miller from Alabama and Jackson from Arkansas. *Id*. Both defendants were fourteen at the time they committed their offenses. *Id*. Miller was convicted of capital murder and was sentenced to life in prison without the possibility of parole. *Id*. Jackson was convicted of capital felony murder and aggravated robbery and was also sentenced to life in prison without the possibility of parole. *Id*. Both of the sentences in these cases were mandated by statute. *Id*. at 2457. The Court held that the Eighth Amendment forbids a sentencing scheme that mandates life in prison without the possibility of parole for juvenile homicide offenders. *Id*. at 2475.

> **[A] judge or jury must have the opportunity to consider mitigating circumstances before imposing the harshest possible penalty for juveniles. By requiring that all children convicted of homicide receive lifetime incarceration without possibility of parole, regardless of their age and age-related characteristics and the nature of their crimes, the mandatory sentencing schemes before us violate this principle of proportionality, and so the Eighth Amendment's ban on cruel and unusual punishment.**

*Id.* However, the Court was clear that this decision did not "categorically bar a penalty for a class of offenders" but instead only mandated "that a sentence follow

a certain process- considering an offender's youth and attendant characteristics – before imposing a particular penalty." *Id.* at 2471.

**{¶17}** In 2014, the Supreme Court of Ohio weighed in on the issue of life sentences without the possibility of parole for juveniles in the case of *Long, supra*. In *Long*, Long and his codefendants were charged with several offenses arising from two separate shootings. *Id.* at ¶2. Long was 17 years old at the time of the offenses. *Id.* Following a jury trial, Long was found guilty of two counts of aggravated murder along with other felonies and various firearm specifications. *Id.* at ¶3. Long was sentenced to consecutive terms of life imprisonment without parole on the aggravated murder counts and an additional 19 years in prison to be served consecutively on the remaining counts and specifications. *Id.* On appeal, Long claimed that the consecutive sentences of life imprisonment without parole violated the Eighth Amendment and that the trial court failed to consider his youth as a mitigating factor. *Id.* at ¶4. The First District Court of Appeals rejected Long's arguments and affirmed the judgment of the trial court. *Id.* at ¶5. The Supreme Court then accepted the appeal. *Id.* at ¶7.

**{¶18}** The Supreme Court considered whether Ohio's sentencing scheme for juveniles violated the holdings in *Graham* and *Miller*. *Id.* at ¶19. The Court determined that it did not because the imposition of the sentence was not mandatory and it took into consideration the age of the offender. *Id.*

> **Nevertheless, for clarification, we expressly hold that youth is a mitigating factor for a court to consider when sentencing a juvenile. But this does not mean that a juvenile may be sentenced only to the minimum term. The offender's youth at the time of the offense must still be weighed against any statutory consideration that might make an offense more serious or an offender more likely to recidivate. Yet because a life-without-parole sentence implies that rehabilitation is impossible, when the court selects this most serious sanction, its reasoning for the choice ought to be clear on the record.**

*Id.*

{¶19} The Court then considered the record to see if the trial court had adequately considered Long's youth as a mitigating factor. The review of the record indicated to the court that the age of Long was argued by defense counsel to request the minimum sentence and by the State to justify the maximum sentence. *Id.* at ¶22. At the sentencing hearing, the defense again raised Long's age as a reason for granting the minimum sentence so that Long would have the opportunity for rehabilitation. *Id.* at 24. The State then argued to the trial court that Long's youth was not a mitigating factor and there was no reason to allow him to have a chance at getting out of prison and reoffend. *Id.* at ¶25. The trial court, however, did not mention the youth of Long in any way. *Id.* at ¶26-27. The Court noted that a sentence of life without the possibility of parole was the equivalent of the death penalty for juveniles. *Id.* at ¶27. "As such, it is not to be imposed lightly, for as the juvenile matures into adulthood and may become amenable to rehabilitation, the sentence completely forecloses that possibility."

*Id.* The Court then determined that the record did not adequately reveal that the trial court considered the youth of Long as a mitigating factor and thus reversed the judgment for resentencing.

{¶20} The Eleventh District Court of Appeals has also dealt with a case where the defendant was sentenced to consecutive sentences of life in prison without the possibility of parole. In *Lane, supra*, Lane entered pleas of guilty to three counts of aggravated murder for the shooting of three classmates at school, two counts of attempted aggravated murder for shooting two other classmates and one count of felonious assault for seriously injuring another student. *Id.* at ¶1. At the time of the offenses, Lane was 17 years old. *Id.* The trial court later sentenced Lane to three life sentences without the possibility of parole for the aggravated murder convictions and an aggregate sentence of twenty-five years in prison on the remaining charges. *Id.* at ¶36. All of the sentences were ordered to be served consecutive to the others. *Id.* On appeal, Lane challenged the imposition of three consecutive life sentences without the possibility of parole as violating his constitutional rights. In the sentencing of Lane, the trial court did not explicitly state that it had considered the defendant's youth as a mitigating factor, but the record indicated that it had. *Id.* at ¶99. The record indicated that the trial court stated that Lane was seventeen and one half years of age at the time, that he was an intelligent student who was planning to graduate early and attend college, and that he considered himself to be mature for his age. *Id.* at ¶101. The court noted

that Lane knew what he did was wrong and that Lane's actions were not the result of any persuasion by adults or peers in that Lane alone planned the crime and executed it. *Id*. at ¶101, 103. Based upon the statements by the trial court, the appellate court determined that the youth of Lane as a mitigating factor was considered, but that other factors outweighed it. *Id*. at ¶108. In determining that there was no error, the court held as follows.

> **In summary, the trial court was not bound by a mandatory sentencing scheme, and considered the factors outlined in *Miller* in imposing sentence. Moreover, by complying with *Miller*, the trial court also complied with [*Long*]. Further, we cannot say appellant's sentence of life in prison without parole is so disproportionate to the crimes he committed as to shock the community's sense of justice. Although appellant's sentence is severe, it is not disproportionately so. He shot six students in school, three of whom were killed and another paralyzed, without provocation and in cold blood. The horrific and senseless nature of this homicide is compounded by the fact that, at sentencing, appellant showed no remorse and even contempt for his victims and their families. In addition, appellant's sentence was within the statutory range for each count of which he was convicted. We therefore hold that appellant's sentence did not amount to cruel and unusual punishment.**

*Id*. at 109. The court also found that the trial court made all necessary findings to impose consecutive sentences and that the consecutive sentences were supported by the record. *Id*. at ¶127-130.

{¶21} In this case, the parties submitted sentencing memoranda to the trial court prior to sentencing Appellant. The trial court also had a pre-sentence investigation report to consider. At the sentencing hearing, several members of

the victims' family testified as to the impact the offenses had on them and asked the trial court to impose the maximum sentence. The State then made the following argument.

> **Your Honor, just last week I argued that this court impose the maximum and consecutive sentence upon [Rhoades]. I'm not going to do that today, but I am on behalf of the State of Ohio compelled to advocate that this court impose a lengthy and significant consecutive prison term and leave to the discretion of the court the duration of those terms. And I do that for one reason.**
>
> **Your Honor, [Appellant] is guilty of aggravated murder and other crimes. He's guilty of the offenses for which he is about to be sentenced, whether or not he is the primary offender or an accessory under Ohio law. And in November of 2011, that day that Robert and Colleen died and were murdered, he did absolutely nothing right. But he's done two things right since then. He confessed his crimes, and he eventually agreed to cooperate with the State of Ohio in the prosecution of [Rhoades] and the continuing efforts of the State of Ohio and law enforcement to uncover the truth about that night. For those reasons, your Honor, I defer to the discretion of the court about the duration of a lengthy and significant prison term * * *.**

Tr. 29-30. The State also told the trial court that Appellant was a juvenile at the time of the offenses and that the trial court needed to consider that in mitigation. Tr. 30.

{¶22} Next, defense counsel presented its argument against a sentence of life in prison without the possibility of parole.

> **In [*Long*] decided earlier this year, the Ohio Supreme Court stated because juveniles have diminished culpability and prospects for reform, they are less deserving of the most severe punishments, in this case life without possibility of parole. There**

-19-

**are three significant gaps between juveniles and adults. First, children have a lack of maturity and an underdeveloped sense of responsibility, therefore leading to recklessness and risk-taking and impulsivity. Second, children are more vulnerable to negative influences and outside pressures, including from their family, friends, and peers. Third, a child's character is not as well formed or fixed as an adult's, therefore leading to the possibility of reform.**

**As stated in *Miller v. Alabama*, the United States Supreme Court case, only a relatively small portion of adolescents who engage in illegal activity develop entrenched patterns of problem behavior. Developments in psychology and brain science continue to show fundamental differences between juvenile and adult minds which lessons a child's moral culpability and enhances the prospect that as the years go by and neurological development occurs in the brain, a child – his deficiencies will be reformed.**

**\* \* \* Given [Appellant's] environmental considerations, family circumstances, personality traits, bad judgments due to youth, mental and emotional issues, or any combination of these and similar factors, this court must sentence [Appellant] to the minimum sentence allowed under R.C. 2929.023.**

**Through the presentence investigation report, [Appellant] was not a juvenile of average intelligence. I believe he only finished the 8th grade and suffered from various mental and emotional disorders such as bipolar, anxiety, ADHD. Further [Appellant's] maturity level was not that of an average juvenile at the time of committing of the crimes. However, to say that [Appellant] will never be able to be rehabilitated is without merit.**

Tr. 34-36. Defense counsel also pointed out that Appellant had shown genuine

remorse by turning himself into the police, confessing, and helping them to catch

Rhoades. Tr. 36-37. Appellant then made a statement as well.

**First off, your Honor, I'd like to say – to apologize to the family for what I have done to their loved ones. Your life will never be the same. I do think about it every day. It's always on my mind,**

> and I'm sorry that you guys have to live with it for the rest of your life.
>
> I have took [sic] a lot of responsibility from that day to now. I've made a lot of mistakes in my life. I understand what I've done. I understand how I've affected the Grube's family, my family, and myself. If I could change what happened, I would. But today, all I want is everybody to know that I'm sorry for what I've done to you guys' loved ones. I cooperated on my own. Myself – I didn't contact the detectives or anybody because of myself. I contacted the detectives for the family to get closure, to know what happened to their loved ones. I think about it every day. It's in my mind day in, day out, all night. That's it, your Honor.

Tr. 38.

{¶23} The trial court took a short recess and returned to sentence the defendant.

> Having acknowledged hearing the victims' statements and proceeding with the on-record proceedings today, the court wishes to confirm for the record the preliminary findings with one minor alteration. That being that the court recited that the preliminary finding of the court based upon the presentence investigation with regard to the defendant's remorse was that he had shown no remorse. And based upon his statements today, although the court questions whether that remorse he indicated in his statement about being sorry to the victims' family, the court would find he still has not indicated any genuine remorse as the court is not convinced that he has the understanding of what he's done to that extent and the impact at least on the families.
>
> And with regard to the issue raised by the defendant through counsel, the court has taken into consideration as required by law the defendant's age at the time of these offenses, he being under the age of 18 years at the time of these offenses; and therefore, acknowledging that he is less deserving of the maximum punishment that an adult would be deserving of

-21-

> **simply because his character traits are not as likely to have already become fixed. Nevertheless, the court believes that he has the ability to be held accountable as an adult. He's been bound over to this court as an adult. He was 17 years and 7 months old at the time of these offenses. Further, he has a criminal record as a juvenile that began, as indicated by the comments on record, since he was ten years old and has been appropriately punished even as an adult while he was a juvenile previously in Randolph County, Indiana. And he was thereafter placed under terms of probation and violated that probation and had it revoked when he was just over 18 years of age. So the court is convinced he understands and should have understood at the time of the commission of these offenses the severity of these actions that he chose to commit.**

Tr. 39-41. Based upon what the trial court stated, it considered the age of Appellant before imposing the sentence. The holding in *Long* does not prohibit the imposition of a life sentence without the possibility of parole, but rather only requires that the record reflect that the trial court considered the age of the defendant in mitigation of the maximum sentence. The record clearly shows that the age was considered. Thus, the trial court complied with the requirements of *Miller* and *Long* in determining the sentence.

{¶24} Appellant also claims that the imposition of consecutive life sentences without the possibility of parole was an error. The imposition of consecutive sentences is governed by R.C. 2929.14(C)(4).

> **If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the**

**offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:**

**(a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.**

**(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.**

**(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.**

R.C. 2929.14(C)(4). The trial court in this case found that consecutive sentences were necessary to protect the public from future crimes and to punish Appellant, that the consecutive sentences were not disproportionate to the seriousness of the offenses and the danger he posed to the public. Tr. 41. The trial court also found that the offenses were multiple offenses committed as part of a course of conduct and that the harm caused by the offenses were so great that no single prison term would adequately reflect the seriousness of his conduct. Tr. 41. Finally, the trial court found that based upon Appellant' criminal history consecutive sentences were necessary to protect the public from future crimes. Tr. 41. A review of the record shows that Appellant and his associates broke into Robert and Colleen's home, restrained them with duct tape, stole from them, then Appellant shot

Colleen multiple times before giving the gun to Rhoades so that Rhoades could shoot Robert. The only reason given for the shooting was to prevent Robert and Colleen from identifying them as the perpetrators of the home invasion. The offenses were very serious and they caused the ultimate harm to the victims, the loss of their life after first being terrorized by the home invaders. Robert was an elderly gentleman who was bound to his wheelchair to prevent him from fleeing. Colleen was his daughter, who was also restrained and was Robert's primary caregiver. Given the harm caused to the victim and the senseless nature of it, the record supports the trial court's findings and conclusion that consecutive sentences were appropriate. Therefore the first assignment of error is overruled.

{¶25} Having found no errors in the particulars assigned and argued, the judgment of the Court of Common Pleas of Mercer County is affirmed.

*Judgment Affirmed*

**SHAW and PRESTON, J.J., concur.**

**/hlo**