[Cite as *State v. Brown*, 2018-Ohio-117.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

State of Ohio                                           Court of Appeals No. L-16-1181

     Appellee                                       Trial Court No. CR0201502648

v.

Devonte Brown                                    **DECISION AND JUDGMENT**

     Appellant                                      Decided:  January 12, 2018

* * * * *

Julia R. Bates, Lucas County Prosecuting Attorney, Claudia A. Ford
and Andrew J. Lastra, Assistant Prosecuting Attorneys, for appellee.

Christopher S. Clark, for appellant.

* * * * *

**SINGER, J.**

{¶ 1} Appellant, Devonte D. Brown, appeals the judgment of the Lucas County

Court of Common Pleas, in which he was sentenced to two consecutive terms of life

imprisonment without the possibility of parole, plus an additional 22 years incarceration.
Finding no error in the judgment, we affirm.

## Assignments of Error

{¶ 2} Appellant sets forth the following assignments of error:

    1.  The Trial Court committed plain error as it did not have subject-matter jurisdiction over Brown since he was subject to a mandatory bindover, which violated his right to due process.

    2.  The Trial Court violated Brown's right under the Eighth Amendment to the United States Constitution, and Article I, Section 9 of the Ohio Constitution against cruel and unusual punishment when it sentenced him to two consecutive life without parole sentences.

## Background

{¶ 3} On August 10, 2015, appellant invaded the victim's home, stabbed her 17 times, killed her son, raped, kidnapped and killed her daughter, and stole her vehicle. When later confronted by police in the stolen vehicle, he fled and crashed.

{¶ 4} Appellant was the age of 16 at the time he committed these acts, and he was the estranged boyfriend of the daughter.  There was a no-contact order in place to keep him from the victims' home.  Appellant had specifically been arrested and put on postrelease control for assaulting the daughter in March 2015.

{¶ 5} On August 11, 2015, a delinquency complaint was filed in the juvenile court and appellant was charged with murder in violation of R.C. 2903.02(B), a felony of the first degree if charged as an adult.  This was juvenile case No. JC15249424.01.

2.

{¶ 6} On August 27, 2015, the state moved the juvenile court to transfer the case to the general division under R.C. 2152.10(A) and 2152.12(A), because appellant was charged with a category one offense and was the age of 16 at the time of commission.

{¶ 7} The juvenile court held a hearing on September 17, 2015. At the hearing appellant stipulated to being born on January 28, 1999, and being the age of 16 at the time of the conduct for which he was charged. Based on these stipulations and additional evidence, the court found probable cause existed and the case was bound over.

{¶ 8} On October 2, 2015, an indictment was filed in the general division, charging appellant with nine counts: (count No. 1) aggravated murder in violation of R.C. 2903.01(B) and (F); (count No. 2) murder in violation of R.C. 2903.02(A) and 2929.02; (count No. 3) aggravated murder in violation of R.C. 2903.01(B) and (F); (count No. 4) murder in violation of R.C. 2903.02(A) and 2929.02; (count No. 5) attempted murder in violation of R.C. 2923.02(A), 2903.02(A) and 2929.02, a felony of the first degree; (count No. 6) aggravated robbery in violation of R.C. 2911.01(A)(3), a felony of the first degree; (count No. 7) rape in violation of R.C. 2907.02(A)(2) (B), a felony of the first degree; (count No. 8) kidnapping in violation of R.C. 2905.01(B)(1) and (C), a felony of the first degree; and (count No. 9) failure to comply with order or signal of police in violation of R.C. 2921.331(B) and (C)(5), a felony of the third degree. The charges were brought under case No. 2015-CR-2648.

{¶ 9} Appellant originally pled not guilty by reason of insanity but, on June 3, 2016, withdrew that plea and pled guilty pursuant to *Alford*, to count Nos. 1, 3, 5, 7, 8 and 9. The other counts were dismissed.

3.

{¶ 10} The court engaged in the required colloquy with appellant and found he was intelligently, knowingly, and voluntarily pleading guilty. The court accepted the plea and found appellant guilty on count Nos. 1, 3, 5, 7, 8 and 9.

{¶ 11} Sentencing was scheduled for June 23, 2016, and a presentence investigation report (PSI) was ordered. Appellant's counsel also requested the court allow a statement and psychological evaluation from a mental health professional, Dr. Thomas Sherman, to assist in the sentencing process. The court stated it would review the reports before sentencing.

{¶ 12} On June 23, 2016, a hearing was held but the court continued the matter until July 18, 2016, because Sherman's evaluation report was not made available. The ordered PSI, however, was provided to the court for review.

{¶ 13} On July 18, 2016, another hearing was held, and based on new precedent of this court in *State v. Ragusa*, 6th Dist. Lucas No. L-15-1244, 2016-Ohio-3373, the trial court again engaged in Crim.R. 11 colloquy with appellant. The court clarified why it was reengaging appellant, and eventually appellant's counsel stated that appellant intended to go forward with the plea.

{¶ 14} The court once more found appellant was intelligently, knowingly, and voluntarily pleading guilty pursuant to *Alford*, to count Nos. 1, 3, 5, 7, 8 and 9. Sentencing was set for July 21, 2016.

{¶ 15} At sentencing, appellant's counsel made a statement in an effort to mitigate. The state also made a statement. After the state, the living victim and other family members made statements regarding the impact the crimes had on their lives.

4.

They also requested appellant be sentenced to the maximum sanctions. The trial court allowed appellant and his counsel to share remarks prior to sentencing.

{¶ 16} The court then said its final remarks and considerations in imposing sentence. The court discussed the facts of the case, appellant's (seven) past delinquency adjudications, and how appellant ignored the order to not have contact with the victims or their household.

{¶ 17} The court then imposed sentence, which was journalized on July 22, 2016, and which was issued as follows:

As to Count 1 (Aggravated Murder): It is ORDERED that [appellant] serve a term of Life Imprisonment without the possibility of Parole.

As to Count 3 (Aggravated Murder): It is ORDERED that [appellant] serve a term of Life Imprisonment without the possibility of Parole.

As to Count 5 (Attempt To Commit Murder): It is ORDERED that [appellant] serve a prison term of 10 years.

As to Count 7 (Rape): It is ORDERED that [appellant] serve a mandatory prison term of 10 years.

As to Count 8 (Kidnapping): It is ORDERED that [appellant] serve a prison term of 10 years.

As to Count 9 (Failure To Comply With An Order Or Signal Of A Police Officer):  It is ORDERED that [appellant] serve a prison term of 24 months.

Counts 1, 3, 5, 7, and 9 are ordered to be served consecutively to one another, but, concurrently to count 8, for a total prison (sic) stated prison term of Life Imprisonment without the possibility of parole, as to count 1 and 3, plus 20 years and 24 months.

{¶ 18} Appellant filed a timely notice of appeal on August 16, 2016, and now appeals the sentence imposed.

## Assignment of Error No. 1

{¶ 19} Appellant first asserts the general division did not have jurisdiction because the juvenile court did not conduct an amenability hearing prior to binding over his case. Appellee contends the general division properly proceeded after the juvenile court relinquished jurisdiction.

{¶ 20} "[A]bsent a proper bindover procedure pursuant to [R.C. 2152.12], the juvenile court has the exclusive subject matter jurisdiction over any case concerning a child who is alleged to be a delinquent." *State v. Wilson*, 73 Ohio St.3d 40, 44, 652 N.E.2d 196 (1995).  "The exclusive subject matter jurisdiction of the juvenile court cannot be waived." *Id.*

{¶ 21} R.C. 2152.12(A)(1)(a)(i), in relevant part, provides that after a complaint has been filed alleging a child is a delinquent child for committing an act that would be murder if committed by an adult, the juvenile court at a hearing *shall* transfer the case if

6.

the child was sixteen years of age at the time of the act charged and there is probable cause to believe that the child committed the act charged. (Emphasis added.). *See also In re A.J.S.*, 120 Ohio St.3d 185, 2008-Ohio-5307, 897 N.E.2d 629, ¶ 22.

{¶ 22} Further, R.C. 2152.12(I) provides:

Upon the transfer of a case under division (A) or (B) of this section, the juvenile court shall state the reasons for the transfer on the record, and shall order the child to enter into a recognizance with good and sufficient surety for the child's appearance before the appropriate court for any disposition that the court is authorized to make for a similar act committed by an adult. The transfer abates the jurisdiction of the juvenile court with respect to the delinquent acts alleged in the complaint, and, upon the transfer, all further proceedings pertaining to the act charged shall be discontinued in the juvenile court, and the case then shall be within the jurisdiction of the court to which it is transferred.

*See*, *e.g.*, *State v. Beauregard*, 8th Dist. Cuyahoga No. 101418, 2015-Ohio-1021, ¶ 25.

{¶ 23} In *Beauregard*, for example, the Eighth District held that because three aggravated robberies charged in the delinquency complaint were part of "the same course of conduct," the juvenile court had authority to transfer "the entire case pursuant to R.C. 2152.12(I)," upon mandatorily binding over any one of the counts alleged. *Id*. at ¶ 27. Beauregard was the age of 16 at the time of committing the chain of robberies, which are category two offenses, so he was bound over. He argued the juvenile court did not find

7.

probable cause existed for one of the robberies, and therefore, transfer of that specific count was in error. *Id*. at ¶ 22. The Eighth District, however, held that "regardless of whether there was sufficient probable cause regarding the robbery of [victim 3], the general division had jurisdiction over that count pursuant to R.C. 2152.12(I)." *Id*. at ¶ 25.

{¶ 24} Likewise, in this case, one charge of murder was brought before the juvenile court, and a hearing was held on September 17, 2015. The juvenile court found probable cause existed, and that appellant was the age of 16 at the time of the murder. The case was transferred and an indictment was filed in the general division. The matter properly proceeded where the court had jurisdiction over all counts pursuant to R.C. 2152.12(I).

{¶ 25} We note this determination is distinguishable from our recent holding in *State v. Rickard*, 6th Dist. Erie Nos. E-16-056, E-16-057, 2017-Ohio-8614.

{¶ 26} In *Rickard*, we reversed and held the general division did not have jurisdiction to convict Rickard because no proper bindover occurred in the juvenile court. *Id*. at ¶ 21. The original case was for acts alleged to have occurred in January 2016. *Id*. at ¶ 3. This original case was properly initiated in and transferred by the juvenile court. At Rickard's sentencing, however, the state introduced another case to be consolidated with that original case. This second case was due to acts from June and July 2016, and thus were not part of "a course of conduct" with the acts alleged in the transferred case. *See also Beauregard* at ¶ 26 (defining "the same course of conduct" as "offenses that through their similarity, regularity and time between them are concluded to be part of a single episode, spree, or ongoing series"). We held no proper bindover occurred and the

8.

matter was remanded. Our rationale focused on how a new case was initiated without it being transferred by the juvenile court.

{¶ 27} Distinguishable from *Rickard*, appellant here committed the offenses alleged in a single episode on August 10, 2015. Although he was only charged with murder in the August 11, 2015 delinquency complaint, the additional eight charges brought in the October 2, 2015 general division indictment were for acts that were part of the August 10, 2015 episode and, thus, were part of a "course of conduct." *See Beauregard*, *Supra*. We find no reversible error in appellant's conviction based on the bindover procedure followed below.

{¶ 28} Accordingly, the first assigned error is found not well-taken.

## Assignment of Error No. 2

{¶ 29} Appellant's second assignment of error consists of four arguments. We will address each, but the fourth will be addressed within the discussion of the second.

## A. Cruel and Unusual Punishment

{¶ 30} Appellant argues the imposition of life without the possibility of parole is cruel and unusual punishment. Appellee contends appellant's case is one of those rare and uncommon cases where the sanction is appropriately imposed.

{¶ 31} The Eighth Amendment to the U.S. Constitution states, "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." *State v. Long*, 138 Ohio St.3d 478, 2014-Ohio-849, 8 N.E.3d 890, ¶ 8 ("*Long II*").

9.

{¶ 32} "Central to the Constitution's prohibition against cruel and unusual punishment is the precept of justice that punishment for crime should be graduated and proportioned to [the] offense." *See In re C.P.*, 131 Ohio St.3d 513, 2012-Ohio-1446, 967 N.E.2d 729, ¶ 25, quoting *Weems v. U.S.*, 217 U.S. 349, 367, 30 S.Ct. 544, 54 L.Ed. 793 (1910).

{¶ 33} As applied to juveniles, the United States Supreme Court has held that the Eighth Amendment prohibits the imposition of the death penalty and the imposition of life without the possibility of parole *for nonhomicide offenses*. (Emphasis added.) *Roper v. Simmons*, 543 U.S. 551, 125 S.Ct. 1183, 161 L.Ed.2d 1 (2005); *Graham v. Florida*, 560 U.S. 48, 130 S.Ct. 2011, 176 L.Ed.2d 825 (2010). More recently, the Eighth Amendment was held to ban mandatory life-without-parole sentences on juveniles in *Miller v. Alabama*, 567 U.S. 460, 132 S.Ct. 2455, 183 L.Ed.2d 407 (2012).

{¶ 34} Nevertheless, the Supreme Court of Ohio has clarified Ohio's sentencing scheme does not run afoul *Miller* "because the sentence of life without parole is discretionary" when applied to "a juvenile found guilty of aggravated murder." *Long II* at ¶ 19.

{¶ 35} Based on the authority of *Long II*, we find it was not error for the court to exercise discretion in sentencing appellant to consecutive terms of life without parole for aggravated murders. Such a case, which results in two aggravated murder convictions, most likely will always be among those rare and uncommon cases where the sanction is appropriately imposed. The trial court did not violate the prohibition against cruel and unusual punishment in that regard, and the first argument is not well-taken.

10.

**B. Irreparable Corruption**

{¶ 36} Appellant asserts the trial court erred in failing to declare his acts reflected irreparable corruption, which he argues is a finding required by *Roper*, *Graham*, and *Miller*, as elaborated on in *Montgomery v. Louisiana*, ___U.S.___, 136 S.Ct. 718, 726-737, 193 L.Ed.2d 599 (2016). Appellee contends the court was not required to make a finding of fact regarding appellant's incorrigibility, and that appellant did not and cannot argue the murders committed reflected transient immaturity.

{¶ 37} As stated in *Montgomery*, "*Miller* required that sentencing courts consider a child's diminished culpability and heightened capacity for change before condemning him or her to die in prison." (Citation omitted). *Id*. at 726. "Although *Miller* did not foreclose a sentencer's ability to impose life without parole on a juvenile, the Court explained that a lifetime in prison is a disproportionate sentence for all but the rarest of children, those whose crimes reflect 'irreparable corruption.'" *Id*., quoting *Miller*, 567 U.S. 460, 132 S.Ct. 2455, 183 L.Ed.2d 407.

{¶ 38} "The age of the offender and the nature of the crime each bear on the analysis." *Graham v. Florida*, 560 U.S. 48, 69, 130 S.Ct. 2011, 176 L.Ed.2d 825 (2010). "The question is whether [the offender] can be deemed, at the time of sentencing, to be irreparably corrupt, beyond redemption, and thus unfit ever to reenter society, notwithstanding the diminished culpability and greater prospects for reform that ordinarily distinguish juveniles from adults." *People v. Palafox*, 231 Cal.App.4th 68, 91, 179 Cal.Rptr.3d 789 (2014) (affirming consecutive terms of life imprisonment under

11.

discretionary sentencing for murders committed by a 16-year-old). *See also Montgomery* at 734 ("*Miller* did bar life without parole, however, for all but * * * those whose crimes reflect permanent incorrigibility.).

{¶ 39} Initially, we find the trial court discussed how and why youth generally weighs against imposing life without parole. At sentencing, the court stated:

> First, children have a lack of maturity and an underdeveloped sense of responsibility leading to reckless, impulsive, and heedless risk-taking. Second, children are more vulnerable to negative influences and outside pressures including family and peers. They have limited control over their environment and a lack of ability to extricate themselves from horrific, crime-producing settings. Third, a child's character is not as well-formed as an adult's. His traits are less fixed and his actions are less likely to be evidence of an irretrievable depravity. The offender's youth at the time of *the offense must still be weighed against any statutory consideration* that might make an offense more serious or an offender more likely to recidivate.* * *

(Emphasis added.)

{¶ 40} Next, we find the court discussed how "the nature of the offense[] to which this harsh penalty" applies in this case was unprecedentedly violent. *Graham* at 69. At sentencing, the court stated:

> These were crimes of rage and control. They were not the first or second, but they were the third in a series of offenses committed by the

12.

[appellant] against [the daughter]. These were not crimes of passion, but they were premeditated. They were depraved. They were monstrous.

These were *crimes of a nature not previously seen in this community*.

(Emphasis added.)

**{¶ 41}** We will also address appellant's fourth argument, in which he asserts the court failed to "specifically and separately" consider his youth as a mitigating factor.

### i. Considering Offender's Youth

**{¶ 42}** We agree appellant's age factors against imposing a life sentence without the possibility of parole because youth is, as a matter of law, a mitigating factor. *See Montgomery* at 726, ___U.S.___, 136 S.Ct. 718, 736-737, 193 L.Ed.2d 599.

**{¶ 43}** "Although *Miller* does not require that specific findings be made on the record, it does mandate that a trial court consider as mitigating the offender's youth and its attendant characteristics before imposing a sentence of life without parole." *Long II*, 138 Ohio St.3d 478, 2014-Ohio-849, 8 N.E.3d 890, at ¶ 27.

**{¶ 44}** Here, the court was made aware of the mitigating effect of appellant's youth by trial counsel and the state, and the court explicitly confirmed it understood appellant's youth was a mitigating factor.

**{¶ 45}** At sentencing, appellant's counsel made a statement about appellant and his youth in an effort to mitigate. Specifically, counsel discussed how juveniles are different than adults, and how appellant's rage and resulting crimes were reflection of his immaturity.

13.

**{¶ 46}** The state also mentioned the court must consider appellant's youth as a mitigating factor. The state specifically said the court "must take into account how [appellant was] different because he is a juvenile" who, as a result of being young, was "reckless and immature," was "vulnerable to negative outside influences," and had "character [that was] not well-formed." The state followed contending the crimes had nothing to do with immaturity, that jealousy and rage are what drove appellant, that no outside influences led to the crimes, and that there was nothing extraordinary in appellant's history to suggest the court should be lenient in sentencing.

**{¶ 47}** Lastly, the transcript reflects the court explicitly stated its obligations under *Long II*. The court recognized *Long II* was "the law relevant to sentencing a juvenile who faces the potential sentence of life without the possibility of parole." The court discussed how *Long II* requires "the youth of a juvenile offender" be separately considered "as a mitigating factor before imposing a life sentence without parole[.]" Also noted was how "the record must reflect that the trial court specifically considered the juvenile offender's youth as a mitigating factor[.]"

**{¶ 48}** Accordingly, based on the statements made in open court, we find appellant's youth as a mitigating factor was extensively argued, considered, balanced and weighed. Any argument to the contrary is meritless.

### ii. Considering the Nature of the Offenses

**{¶ 49}** Further, we agree with the trial court that the nature of the offenses committed is unprecedentedly violent and heinous.

14.

**{¶ 50}** We primarily note "[juvenile offenders] who do not kill, intend to kill, or foresee that life will be taken are categorically less deserving of the most serious forms of punishment than are murderers." *See Graham* at 69, 560 U.S. 48, 130 S.Ct. 2011, 176 L.Ed.2d 825, citing to *Kennedy v. Louisiana*, 554 U.S. 407, 128 S.Ct. 2641, 171 L.Ed.2d 525 (2008); *Enmund v. Florida*, 458 U.S. 782, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982); *Tison v. Arizona*, 481 U.S. 137, 107 S.Ct. 1676, 95 L.Ed.2d 127 (1987); and *Coker v. Georgia*, 433 U.S. 584, 97 S.Ct. 2861, 53 L.Ed.2d 982 (1977).

**{¶ 51}** However, appellant here was indeed a "murderer." *Id.* In fact, he was found guilty of two counts of aggravated murder. We find this case is certainly rare and uncommon due to the evil disregard for life appellant exhibited when he intentionally ended two lives and attempted to end another. This is not a case in which transient immaturity or an outside influence was a contributing factor; and to the contrary, the record reveals appellant was the sole perpetrator to plan and commit such heinous and inexcusable acts.

### iii. Additional Considerations

**{¶ 52}** Based on its factoring of appellant's youth and the nature of the crimes, we cannot say the trial court failed to adequately consider or address how appellant's acts reflected irreparable corruption. Even going beyond those factors, we find the record supports a finding of irreparable corruption. The court thoroughly explained its thoughts and reasons for imposing consecutive terms of life without parole, there implying the crimes at issue reflected irreparable corruption. *See Montgomery* at 734, ___U.S.___, 136 S.Ct. 718, 736-737, 193 L.Ed.2d 599 (clarifying *Miller* does not require courts make

15.

or state findings of fact regarding a child's incorrigibility). Based on the explanation as to why it was imposing the specific sanctions, we can say with certainty that the court reflected on the magnitude and impact the crimes had on the people present and on the community as a whole.

{¶ 53} More specifically, the record reveals before sentencing appellant the court considered the disturbing facts as a guide and stated that it balanced the likelihood of recidivism factors. The court also dismissed the argument that the crimes committed were one-time acts of passion, which was a position put forth by appellant and his expert witness, Dr. Sherman. The court discussed the impact on the victims and their property, appellant's criminal record, the seriousness of the conduct, and the danger appellant posed to the public. Based on its statements, the court imposed sentence in accordance with the criteria under R.C. 2929.11 and 2929.12. Accordingly, we find no error in the judgment and conclusion that the crimes reflected irreparable corruption. Although the court did not repeatedly say "irreparable corruption," the necessary factors were considered. Any argument to the contrary is meritless.

### C. Impossibility of Finding Youth Irreparable

{¶ 54} Lastly addressed, appellant asserts it is impossible to find a juvenile's acts reflect irreparable corruption because no juvenile mind is fully developed. Appellee does not directly address this argument, but does assert appellant did not put forth this position at trial and, hence, must and cannot meet the plain-error standard.

16.

{¶ 55} For persuasive support appellant cites an opinion from the Supreme Court of Iowa, wherein the court addressed the impossibility of declaring a child's acts reflect irreparable corruption. *See State v. Sweet*, 879 N.W.2d 811 (Iowa 2016).

{¶ 56} In *Sweet*, a 17-year-old killed his maternal grandparents and was charged with two counts of first-degree murder. At trial Sweet reached a plea deal, and the court accepted the plea and requested a presentence investigation (PSI) report before sentencing. The PSI report revealed Sweet suffered from a turbulent family dynamic and life, depression or bipolar disorder, being raped at the age of four, alcohol and drug abuse, attention deficit disorder, and physical and mental abuse by the victim-grandfather.

{¶ 57} At sentencing Sweet offered testimony of Dr. Stephen Hart, a qualified expert in the field of clinical psychology. Hart reviewed medical records and interviewed Sweet prior to testifying. Hart summarized his scientific understanding of the adolescent brain, and introduced to the record the school of thought that "until the age of about twenty-five there is a period of rapid change or development in the adolescent brain." *Id.* at 815. Hart stated "the earliest a determination could be made regarding Sweet's potential for rehabilitation was age thirty." *Id.* at 816. This was due to Sweet's youth.

{¶ 58} Despite Hart's testimony, the *Sweet* lower court sentenced Sweet to life in prison without the possibility of parole.

{¶ 59} On direct appeal, the Supreme Court of Iowa ("the *Sweet* court") summarized the lower court judgment as follows:

The district court noted that Sweet was seventeen years and three months old at the time of the murder[s]. While his maturity was debatable, the district court stressed that the crimes were premeditated. The district court felt that Dr. Hart's characterization of Sweet's possibility of rehabilitation as mixed was overly optimistic. Further, the district court found Sweet's case was the rare case in which a sentence of life without the possibility of parole was warranted, as the murders were horrific and showed utter lack of humanity. The district court concluded that Sweet was currently, and will continue to be, a threat to society and that the interests of justice and community safety outweighed mitigating factors.

*Sweet* at 816.

{¶ 60} The main issue on appeal was "whether the small number of juvenile offenders convicted of murder may be sentenced at time of trial to life in prison without the possibility of parole or whether such a determination must be made at a later date by a parole board." *Id*. at 836. In addressing the issue, the court concluded that "sentencing courts should not be required to make speculative up-front decisions on juvenile offenders' prospects for rehabilitation because they lack adequate predictive information supporting such a decision." *Id*. at 839. The court further found "[t]he parole board [is] better able to discern whether the offender is irreparably corrupt after time has passed, after opportunities for maturation and rehabilitation have been provided, and after a record of success or failure in the rehabilitative process is available." *Id*. The matter was remanded for Sweet to be resentenced to a prison term where he could later seek parole.

18.

**{¶ 61}** Consistent with *Sweet*, appellant here argues it was impossible for the trial court to find the aggravated murders, rape and attempted murder he committed reflect irreparable corruption because his mind was and is not yet developed.

**{¶ 62}** We find this position is not well-taken because it undermines the court's power to sentence and limits the court's statutorily granted discretion.

### i. Power to Sentence

**{¶ 63}** "The judicial power of the state is vested in a supreme court, courts of appeals, courts of common pleas and divisions thereof[.]" *See* Ohio Constitution, Article IV, Section 1. "The several judges* * * of the common pleas * * * shall* * * have and exercise such *power* and *jurisdiction*, at chambers, or otherwise, as may be *directed by law*." (Emphasis added.) *See* Ohio Constitution, Article IV, Section 18.

**{¶ 64}** As "directed by law," *id*., the power of the judiciary includes the power to sentence a convicted offender. *See* R.C. 2152.12(I), *supra*, ("the case then shall be within the *jurisdiction* of the court to which it is transferred"); R.C. 2929.03(A)(1)(a), *infra*, (stating that for aggravated murder "*the trial court shall* impose one of the following sentences on the offender"); Crim.R. 32(C) (providing that a judgment of conviction *shall set forth the sentence* and judge's signature); *State v. Byers*, 7th Dist. Columbiana No. 07-CO-39, 2008-Ohio-5051, ¶ 70 (exploring the "judiciary branch" and "*its power to sentence*").

**{¶ 65}** This power in the judiciary has existed for Ohio common pleas courts since the inception of the state's Constitution, which explicitly stated "the judges of the court

19.

of common pleas shall by virtue of their offices, be conservators of the peace in their respective counties." *See* Ohio Constitution of 1802, Article 3, Section 7.

{¶ 66} Therefore, because this power to sentence is granted to the common pleas court, in this case we find to disallow the court from finding impliedly or otherwise that an episode in which appellant committed two aggravated murders, a rape, and an attempted murder reflects irreparable corruption undermines that power.

### ii. Court Discretion

{¶ 67} Furthermore, often granted with this power to sentence is discretion to impose specific sanctions typically within statutory guidelines and ranges.

{¶ 68} For example, R.C. 2929.03(A) provides possible sanctions for offenders who commit aggravated murder.

(A)  If the indictment or count in the indictment charging aggravated murder does not contain one or more specifications of aggravating circumstances listed in division (A) of section 2929.04 of the Revised Code, then, following a verdict of guilty of the charge of aggravated murder, the trial court shall impose sentence on the offender as follows:

(1)  Except as provided in division (A)(2) of this section, the trial court shall impose one of the following sentences on the offender:

(a)  *Life imprisonment without parole*;

(b)  Subject to division (A)(1)(e) of this section, life imprisonment with parole eligibility after serving twenty years of imprisonment;

(c) Subject to division (A)(1)(e) of this section, life imprisonment with parole eligibility after serving twenty-five full years of imprisonment;

(d) Subject to division (A)(1)(e) of this section, life imprisonment with parole eligibility after serving thirty full years of imprisonment;* * *

(Emphasis added.) *See* R.C. 2929.03(A)(1)(a)-(d).

{¶ 69} Pursuant to R.C. 2929.03(A)(1)(a), appellant here was sentenced to consecutive terms of "Life imprisonment without parole." Imposition of these sanctions required an exercise of discretion to determine whether appellant's crimes reflected irreparable corruption as mandated in *Miller*, *supra*. Forbidding such a finding due to appellant's youth, as held in *Sweet*, limits the court's sentencing discretion.

{¶ 70} We note review of Ohio case law supports exercising discretion and sentencing juveniles to life without parole despite their undeveloped minds. *See*, *e.g.*, *State v. Long*, 1st Dist. Hamilton No. C-140398, 2015-Ohio-2114, ¶ 16-18 ("*Long III*"); *State v. Lane*, 11th Dist. Geauga No. 2013-G-3144, 2014-Ohio-2010, ¶ 82-109; *State v. Rafferty*, 9th Dist. Summit No. 26724, 2015-Ohio-1629, ¶ 120-125; *State v. Roark*, 3d Dist. Mercer No. 10-14-11, 2015-Ohio-3811, ¶ 22- 23.

### iii. Plain Error

{¶ 71} As a final note, we find convincing appellee's assertion that appellant did not put forth this argument at trial and, therefore, must meet the plain-error standard.

{¶ 72} "The failure to raise a constitutional issue at the trial level waives the right to advance a constitutional argument at the appellate level." *City of Toledo v. Jenkins*, 6th Dist. Lucas No. L-14-1164, 2015-Ohio-1270, ¶ 15, citing *State v. Traxler*, 6th Dist.

21.

Williams No. WM-06-005, 2007-Ohio-2025. Absent plain error, "appellant waived his constitutional arguments." *Traxler* at ¶ 18, citing Crim.R. 52(B) ("[P]lain error that affects a substantial right may, even in the absence of an objection, be considered [on appeal].").

{¶ 73} Plain-error applies where: (1) the trial court erred or deviated from a legal rule; and, (2) that error or deviation prejudiced appellant, or affected his or her substantial rights. *See*, *e.g.*, *State v. Fisher*, 99 Ohio St.3d 127, 2003-Ohio-2761, 789 N.E.2d 222, ¶ 7.

{¶ 74} We first find no error or deviation from law in this case, as we decline to subscribe to the rationale put forth in *Sweet* which supports that it is impossible for a trial court to find a juvenile's offenses reflect irreparable corruption. *See Sweet*, 879 N.W.2d at 839.

{¶ 75} We second find there is no evidence in the record supporting appellant's rehabilitative process has been a success. Thus we cannot say he has been prejudiced by the imposition of life without parole.

{¶ 76} Consequently this is not the exceptional case where the plain-error doctrine applies. *See State v. Long*, 53 Ohio St.2d 91, 95, 372 N.E.2d 804 (1978) ("The plain error rule is to be invoked only in exceptional circumstances to avoid a miscarriage of justice."). We therefore find multiple grounds to dispose of this third argument, and appellant's second assignment of error fails in its entirety.

22.

**Conclusion**

{¶ 77} For the foregoing reasons, the judgment of the Lucas County Court of Common Pleas is affirmed. Appellant is ordered to pay costs pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Arlene Singer, J.                  _____

JUDGE

James D. Jensen, J.

_____

Christine E. Mayle, P.J.                JUDGE
CONCUR.

_____

JUDGE

This decision is subject to further editing by the Supreme Court of
Ohio's Reporter of Decisions. Parties interested in viewing the final reported
version are advised to visit the Ohio Supreme Court's web site at:
http://www.sconet.state.oh.us/rod/newpdf/?source=6.